## O. C. ALLEN v. FIRST N. BANK.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 10, 1889—Decided May 27, 1889.
[To be reported.]

1. The cashier of a national bank, holding the paper of a firm of which the cashier is a member, has no power to bind the bank by an agreement that there shall be no liability upon an accommodation note procured by him to be substituted, for a special purpose, for the indebtedness of his firm.

2. Nor may the accommodation maker defend upon the ground that his note was procured by the cashier, a member of such debtor firm, to cover up from the bank examiner, by such substitution, the fact that the bank had loaned to the firm in excess of ten per cent of its capital stock.

3. It is no defence to the maker of an accommodation note discounted by a bank, that the bank had discounted paper of another person or firm to an amount exceeding the one tenth of its capital: O'Hare v. Second N. Bank, 77 Pa. 96; Mapes v. Second N. Bank, 80 Pa. 163.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 310 January Term 1889, Sup. Ct.; court below, No. 46 December Term 1887, C. P.

On October 27, 1887, the First National Bank of Warren

brought assumpsit against O. C. Allen, to recover on a note made by the defendant dated November 5, 1886, for $5,000, payable at three months at the First National Bank of Warren, to the order of Beecher & Copeland, and by Beecher & Copeland indorsed. The defendant pleaded, non-assumpsit.

At the trial on October 5, 1888, the plaintiff proved the note, put it in evidence, and rested.

The defendant, O. C. Allen, was then called in his own behalf, and testified that on a certain date in 1884, he saw Mr. Beecher, the cashier of the plaintiff bank, at the Warren post-office, the witness then being postmaster:

Q. What did he come to see you about?

Defendant's counsel proposes to prove, by the witness, that on November 5, 1884, Mr. Beecher called on the defendant, at the post-office in Warren, and informed him, in substance, that the First National Bank of Warren was carrying for the firm of Beecher & Copeland a quantity of oil certificates, in excess, as he stated, of what they were permitted to carry for one firm under the laws of the United States, and that the bank desired to have that oil divided up among other parties, or carried in the name of other parties, so as to make an appearance of compliance with the law; and for that purpose he asked the defendant to become a maker of a note for $5,000, to be secured by 5000 barrels of the oil that the bank was carrying for Beecher & Copeland; and in compliance with this request, and without other consideration, Mr. Allen executed the note and delivered it to Mr. Beecher, and it was placed in the bank, with the oil as its collateral security, with the express agreement that Mr. Allen should not be liable for the note; to be followed by evidence that this note is the second or third renewal of that note, and with the same conditions and considerations, and with the same agreement that there should be no liability on the part of Mr. Allen.

Objected to, because there is no authority shown or offered to be shown in the cashier to make any such agreement for the bank; and that the agreement proposed to be shown would not be binding upon the bank, in any event; that the agreement is not within the ordinary powers of the cashier to make, and no special authority is proposed to be shown; that such an agreement, if made by due authority of all the directors,

would be void as against the stockholders, being in fraud of
their rights; and that the whole evidence does not tend to
show any legal defence to the note in suit, and is therefore
incompetent and irrelevant; also, that the evidence proposed
to be given tends to defeat and destroy a written instrument
by verbal testimony, and is therefore incompetent.

Defendant's counsel adds to the proposition as follows: To
be followed also by evidence, that at the date of said agreement
the plaintiff bank held the obligation of Beecher & Copeland
for said $5,000, secured by said oil certificates, and still holds
said obligation and oil certificates.

Plaintiff's counsel objects to the offer as amended, for the
reason that the whole evidence offered to be given does not
tend to establish a defence on the part of this defendant; the
contract or agreement not having been made with the bank by
any officer authorized to make it, because there is no authority
offered to be shown in the cashier to make such an agreement,
and that the same was not within his ordinary powers, as
cashier; that the agreement itself, if made for the bank and by
due authority, would be void under the circumstances stated,
and would not avail as a defence to the defendant; and that
the evidence is incompetent, as tending to contradict the written
instrument upon which the suit is brought.

Objection sustained, offer refused; exception.[1]

Defendant proposes to prove by this witness, and others,
that the note offered in evidence by the plaintiff, was given for
an antecedent debt of Beecher & Copeland to the said bank,
and was without consideration; to be followed by evidence
that the plaintiff bank, in this case, paid no consideration for
said note.

Objected to, as incompetent and irrelevant, in this issue;
the proposition itself showing that the note was given upon
a good consideration, that is to say, the antecedent debt of
Beecher & Copeland.

Objection sustained, offer refused; exception.[2]

Defendant proposes to prove by this witness and others, that
the plaintiff bank, had, previous to the making by defendant
of the note of which the note in this case is a renewal, dis-
counted paper for Beecher & Copeland, for an amount of
more than one tenth part of the capital stock of said bank, and

had in that manner violated § 5200, Revised Statutes of the United States; and that the original note given by the defendant, as well as all the renewals of the same, and including the note offered by the plaintiff in this case, was given without consideration, and for the express purpose of deceiving the bank examiner as to the true condition of said plaintiff bank, and to avoid the consequences of the violation of said United States laws. The purpose of the offer is to show that the note in question was given for the purpose of screening the bank from the violation of the law which they had committed in that respect, and was illegal and void.

Objected to, as incompetent and irrelevant, because the facts stated would not avail as a defence in this case, as against the bank.

Objection sustained, offer refused; exception.[3]

Defendant offers in evidence the propositions above made, as one proposition, to be followed by evidence that the original note was given about November, 1884, and renewed from time to time under the same agreement under which the first note, of which the note in question was a renewal, was made, to wit: that it was for the purpose of deceiving the bank examiner as to the violation of said United States laws, and with the express agreement that there should be no liability whatever on the part of said defendant, O. C. Allen; this for the purpose of showing acquiescence and ratification in this arrangement by the bank, of the agreement.

Objected to, for the reasons given in the objections to the first offer made by the defendant.

Objection sustained, offer refused; exception.[4]

M. Beecher, called for defendant, testified that he was the cashier of the plaintiff bank, and was a member of the firm of Beecher & Copeland; that the first note signed by defendant Allen, of which the note in suit was a renewal note, was given September 9, 1884. An offer to show by this witness the facts set out in the preceding offers being refused, the witness was then examined as to the number and dates of the renewals of the note of September 9, 1884, and the discounts charged on each, his testimony showing that the discounts had not exceeded the rate of 6 per cent.

The court, BROWN, P. J., charged the jury as follows:

The court assumes the responsibility of determining this case, for the present, at least.

The plaintiff requests us to say to you, that there is no sufficient evidence that any interest in excess of the legal rate was ever taken, charged, received or reserved by the plaintiff upon the note in suit, or any previous note of the defendant of which it is a renewal, and the verdict should be for the plaintiff for the amount of the note with legal interest from its maturity.

Answer: This point is affirmed.[6]

We say to you, the case depends upon certain questions of law, that we desire, inasmuch as the matter is important to both sides, to more fully examine; and we take the responsibility, so far as you are concerned, of instructing you that the verdict should be for the plaintiff for the amount of the note, with the interest to this date.[5]

The jury returned a verdict for the plaintiff for $5,580.83. A rule for a new trial having been discharged, the defendant took this writ, assigning as error:

1–4. The refusal of defendant's offers.[1 to 4]

5. The direction to find for the plaintiff.[5]

6. The answer to the plaintiff's point.[6]

*Mr. Charles Dinsmoor* and *Mr. W. W. Wilbur* (with them *Mr. Geo. H. Higgins*), for the plaintiff in error:

1. It is urged that the defendant was entitled to the evidence rejected, under the authority of Cake v. Pottsville Bank, 116 Pa. 264. The plaintiff bank is not an innocent holder who discounted or purchased for value; neither is the defendant an accommodation maker, for the purpose of enabling Beecher & Copeland to obtain money on the note. The bank gives no consideration whatever for the note, gives up no security it holds for the indebtedness the note was given for, but still holds Beecher & Copeland's note and the oil they pledged to the bank for its security. We therefore submit that under the ruling of the case cited, the offers of evidence should have been admitted. The same rulings are found in Maynard v. Sixth N. Bank, 98 Pa. 250; Liggett's App., 111 Pa. 298.

2. The evidence that the note, for which the note in suit was

a renewal, was given for the special purpose of being substituted for a note the bank had discounted for Beecher & Copeland, in order to deceive the bank examiner, together with the fact that the debt for which the note was to be substituted was a pre-existing debt, and that there was no consideration and no value given for the note by the bank, was admissible as a defence to the defendant's liability: Carpenter v. National B. of the Republic, 106 Pa. 170. Moreover, the paper must have been discounted by the directors of the bank, for the function of discounting commercial paper is theirs, and they cannot delegate it to a single individual or officer: Morse on Banks, 90, 92; Bank of U. S. v. Dunn, 6 Pet. 51; Bank of Metropolis v. Jones, 8 Pet. 12. The offence of the bank in discounting commercial paper for the single firm of Beecher & Copeland, to an amount largely exceeding that permitted by the law affecting national banks, rendered the note a void contract, and a court of justice will decline its aid to enforce it: Coppell v. Hall, 7 Wall. 542; Mitchell v. Smith, 1 Binn. 110; Bredin's App., 92 Pa. 241; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173; Fowler v. Scully, 72 Pa. 456; Maybin v. Coulon, 4 Dall. 298; Seidenbender v. Charles, 4 S. & R. 150.

3. In attempting to distinguish this case from Cake v. Pottsville Bank, 116 Pa. 264, it was said that in our offer of testimony as to the acts of Beecher in procuring the signature of defendant to the notes, we made no offer to prove that he was acting within the range, or even within the apparent range, of the ordinary power and authority of a cashier. Such proof was not necessary. If one party be not bound by the agent's undertaking, neither is the other: Pittsb. etc. R. Co. v. Stewart, 41 Pa. 54. "In this respect, a corporation differs nothing from a natural person; if it would enforce the contracts of its agents, it must first agree to be bound by them:" Caley v. Railroad Co., 80 Pa. 363; Keough v. Leslie, 92 Pa. 424. A bank cashier is considered the executive officer, through whom and by whom the whole moneyed operations of the bank, in paying or receiving debts, or discharging and transferring securities, are to be conducted: Fleckner v. Bank of U. S., 8 Wheat. 338; City Bank v. Perkins, 29 N. Y. 554 (86 Am. Dec. 332); Story on Agency, § 114; Cochecho N. Bank v. Haskell, 51 N. H. 116 (12 Am. Rep. 68). Beecher, therefore, was acting within the

range of his power and duties as cashier, in making the arrangement with the defendant.

*Mr. Charles H. Noyes* (with him *Mr. W. D. Hinckley, Mr. R. Brown, Mr. Charles W. Stone* and *Mr. W. E. Rice*), for the defendant in error:

1. If it is contended that the arrangement set up in this case was within the ordinary powers of the cashier of a national bank, it must be established as the law that a cashier, who is also a debtor of the bank, may procure the making or indorsing of a note for his own accommodation, by an agreement binding upon the bank that there shall be no liability upon the note. It is not the duty of a cashier to make such agreements, nor has he the power to bind his bank, except in the discharge of his ordinary duties: Minor v. Mechanics' Bank, 1 Pet. 46; Bank of U. S. v. Dunn, 6 Pet. 55; Bank of Metropolis v. Jones, 8 Pet. 12; Hackney v. Insurance Co., 4 Pa. 185; Stewart v. Huntingdon Bank, 11 S. & R. 267; Custar v. Gas & Water Co., 63 Pa. 381; Mapes v. Second N. Bank, 80 Pa. 163; West St. L. Sav. Bank v. Shawnee etc. Bank, 95 U. S. 557. The principles followed in these cases are controlling in the present case.

2. It was no part of the duty of the cashier to procure the note in suit. The making of the note by Allen, at the request of Beecher, was one thing; the acceptance of the note by the bank in lieu of, or as collateral security for the Beecher & Copeland paper, was another. The conversation between Beecher and the defendant at the making of the note, cannot by any legerdemain be transformed into an agreement by the bank. The bank never had any dealing with Mr. Allen at all. It took his note, but nothing more. The agreement if made, was one which no single officer had a right to make, and which, if made by the cashier for his own benefit and relief, without the knowledge of the directors, was a fraud upon the stockholders. It is not the case of an adjustment of a past due debt, with a view to its collection, as was Cake v. Pottsville Bank, 116 Pa. 264, but a substitution of the note of Allen for the note of Beecher & Copeland.

3. It is true that one who takes a note to secure an antecedent debt, and without other consideration, is not a holder for value, in the sense that he may recover against maker and in-

dorser regardless of all circumstances; but the cases recognize the doctrine that the maker of accommodation paper cannot set up want of consideration against the holder, even though it is only held as a pledge for an antecedent debt; and this is expressly held in Maynard v. Sixth N. Bank, 98 Pa. 253; and Stephens v. Monongahela N. Bank, 88 Pa. 157. The argument that the court was in error in refusing to allow the defendant to prove that the loans by the bank to Beecher & Copeland were in excess of one tenth of its capital stock, etc., is answered by the rulings in O'Hare v. Second N. Bank, 77 Pa. 96; Mapes v. Second N. Bank, 80 Pa. 163; Stephens v. Monongahela N. Bank, 88 Pa. 157.

OPINION, MR. CHIEF JUSTICE PAXSON:

We think the offers of evidence in this case were properly rejected. Assuming all the facts covered by the offers to have been proved, they would not have amounted to a defence as against the bank. The whole confusion in the case grows out of the fact that the Mr. Beecher mentioned in the offer was at the same time a member of the firm of Beecher & Copeland, and cashier of the First National Bank of Warren, plaintiff below. The effort here is to make the bank responsible, not merely for matters done in the scope of his duties as cashier, or by authority of the bank, but also for his acts and declarations done or made in the pursuit of his private business. His interview with the defendant below at the post-office can only be taken as an effort on his part to procure accommodation paper to the amount of $5,000, to take up a like amount of his firm's paper at the bank. In some way his firm had obtained a larger line of discount at the bank than is permitted by the general banking law; the bank examiner was expected soon, and it became necessary for defendant's firm to retire some of its paper. It was equally necessary, perhaps, for the bank; and the defendant, as its cashier, must have been fully aware of the importance of getting the accounts of his own firm in proper condition. He succeeded in procuring from the defendant his note for $5,000, to replace a like amount of his firm's paper, with an assurance that the defendant should never be called upon to pay it. Had he given such assurance in writing it would not have made any difference, as the note was evidently for the

accommodation of his firm, and it was as much the duty of the latter to protect it as if a stipulation had been made to that effect in writing. This is all that the offer of evidence amounts to. There is not a word to implicate the bank in any matter, except that it had allowed defendant's firm to exceed its lawful line of discount. There was no offer to show that the bank did anything, either by its board of directors or its officers, acting within the scope of their official duties, or by virtue of an express or implied authority from the bank. Nor was there any error in rejecting the offer to show that the bank had discounted paper for Beecher & Copeland for an amount of more than one tenth part of its capital. This was no concern of the defendant. That it was no defence to the note is shown by O'Hare v. Second National Bank of Titusville, 77 Pa. 96, and Mapes v. the same bank, 80 Pa. 163. There is nothing to show, nor was there any offer to prove, that the plaintiff bank knowingly and wilfully made this loan in excess of the legal limit. Such a matter may often occur by mistake ; and when it does, it is perfectly proper to correct it. We see no error in affirming the plaintiff's point. The allegation of usury was not sustained by the evidence, and as there was no defence to the note it was not error in the learned judge to direct a verdict for the plaintiff. The view we take of the case renders a discussion of the authorities cited unnecessary. They have no application.

Judgment affirmed.