# National Bank of Tarentum, Appellant, *v.* Equitable Trust Company of Pittsburg.

*Principal and surety—Employee's bond—Bookkeeper's bond—Certificate
of cashier to surety company—Banks and banking—Examination of book-
keeper's accounts—Evidence.*

1. Where a surety company on the bond of the bookkeeper of a bank,
addresses each year before the renewal of the bond, a request to the
bank for information as to the bookkeeper's conduct, and the cashier of
the bank mistakenly certifies to the surety company that the bookkeep-
er's accounts have been examined and found correct, that all moneys han-
dled by him have been accounted for, and that there is no reason known
to the bank why the bond should not be continued, and the bond is con-

tinued on the strength of the certificate, the bank cannot disavow the certificate of the cashier, and in an action on the bond a verdict and judgment for the surety company relieving it from liability is amply justified.

2. Where the directors of a bank, through long usage, permit the cashier to act without their express authority, in matters in which they might lawfully authorize him to act, they cannot after such action upon his part, be heard to deny his authority, to the detriment of those who have relied upon it.

3. The certificates made by the cashier of a bank to a surety company, the bondsman of a bookkeeper, certified that on or about their dates the books and accounts of the bookkeeper were examined and found correct in every respect. This statement was repeated from year to year at periods of the renewal of the bond. After this had been going on for several years an audit disclosed the fact that in each year during the operation of the bond large sums of money had been extracted by the bookkeeper. The method pursued was in changing upon the journal enough to cover the amount of his shortage and posting the altered amount to the general ledger, leaving the postings to the individual ledger untouched. An effective audit made at any time would have shown the shortages, and it did appear that trial balances taken from the ledger from time to time were out of balance, and that the bank permitted these errors to go uncorrected. *Held*, that the evidence was sufficient to support a finding that the certificates were untrue, and that the surety was relieved of its bond.

4. In such a case evidence as to the entries made by the bookkeeper in the books of the bank, and as to the character of the examinations of the accounts by the board of directors, and with respect to the certificates made by the cashier, is all relevant and competent testimony.

Argued Nov. 2, 1908. Appeal, No. 234, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., April T., 1905, No. 1,072, on verdict for defendant in case of The National Bank of Tarentum v. The Equitable Trust Company of Pittsburg. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit on bond of suretyship. Before SHAFER, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were various rulings on evidence, quoting the bill of exceptions, and various instructions, quoting them.

*J. E. McKelvy*, with him *J. Merrill Wright*, for appellant.—
Certificates made by the cashier as to the character of James
H. Ekas, a coemployee, and the condition of his accounts, not
being made with the knowledge or authority of the board of
directors of the bank, are not binding on the bank: Lieberman
v. First Nat. Bank, 40 Atl. Repr. 382; U. S. Fidelity & Guar-
anty Co. v. Muir, 115 Fed. Repr. 264; American Surety Co.
of N. Y. v. Pauly, 170 U. S. 133 (18 Sup. Ct. Repr. 552); Pitts-
burg, Ft. Wayne & Chicago Ry. Co. v. Shaeffer, 59 Pa. 350.

The default of Ekas to the bank prior to the giving of the
bond and its various renewals, being unknown to the officers of
the bank, would not discharge the defendant as surety: Wayne
v. Commercial Nat. Bank, 52 Pa. 343; Tapley v. Martin, 116
Mass. 275; Bowne v. Mt. Holly Nat. Bank, 45 N. J. Law, 360.

It is good faith and not diligence that is required of the cred-
itor as the condition of his right to hold the surety: Sparks v.
Farmers' Bank, 3 Del. Ch. 274; Amherst Bank v. Root, 43
Mass. 540; Wayne v. Commercial National Bank, 52 Pa. 343;
Atlas Bank v. Brownell, 9 Rhode Island, 168; Pittsburg, Ft.
Wayne & Chicago Ry. Co. v. Shaeffer, 59 Pa. 350; Lieberman
v. First National Bank of Wilmington, 40 Atl. Repr. 382; Wil-
liams et al. v. Lyman, 88 Fed. Repr. 237.

*John P. Hunter*, of *Lyon, Hunter & Burke*, for appellee.—It
was a question for the jury, whether Camp had authority to
make the certificates, and if such authority, either express or
implied, existed, the plaintiff was bound thereby: American
Surety Co. of N. Y. v. Pauly, 170 U. S. 133 (18 Sup. Ct. Repr.
552); Guarantee Co. of North America v. Mechanics' Savings
Bank & Trust Co., 183 U. S. 402 (22 Sup. Ct. Repr. 124); Fidel-
ity & Deposit Co. v. Courtney, 186 U. S. 342 (22 Sup. Ct. Repr.
833); Mining Co. v. Anglo-California Bank, 104 U. S. 194;
Vergennes Bank v. Warren, 7 Hill (N. Y.), 91; Davenport v.
Stone, 104 Mich. 521 (62 N. W. Repr. 722).

The bank, having intrusted the cashier with the obligation
of procuring this bond, is bound by all the representations
made by him in order to its procuration, and cannot accept the
benefit of his acts and repudiate the obligation imposed: Mun-

dorff v. Wickersham, 63 Pa. 87; Meyerhoff v. Daniels, 173 Pa. 555; Sunbury Fire Ins. Co. v. Humble, 100 Pa. 495.

The fact that the books were out of balance in all these years not having been communicated to the surety company either at the time of the original bond, or its subsequent renewals, relieves that company from the bond: Lauer Brewing Co. v. Riley, 195 Pa. 449; Brewing Co. v. McLean, 15 Pa. Superior Ct. 38.

OPINION BY MR. JUSTICE POTTER, January 4, 1909:

At the instance and under the direction of his employer, the National Bank of Tarentum, and at the cost of the bank, one James H. Ekas obtained from the defendant company a fidelity bond for the sum of $10,000 conditioned to make good to the bank all pecuniary loss sustained by it through any fraud or dishonesty on the part of the said Ekas in connection with his duties as bookkeeper, during the continuance of the bond. It covered a period of twelve months ending April 10, 1899. Its provisions were extended from year to year upon the payment of an additional annual premium until April 10, 1904. Attached to the original application was a statement signed by the cashier on behalf of the bank, commending the applicant, giving the time of his previous service with the employer, etc., and certifying that his accounts had been properly examined, and found correct in every respect.

Each year, prior to April 10, the trust company sent the bank a notice of which the following is a copy:

"To NATIONAL BANK OF TARENTUM, TARENTUM, PA.

"DEAR SIR: We hereby notify you that Bond No. 11, for $10,000, issued by this company on James H. Ekas, in your employ as bookkeeper, will expire on the tenth day of April next. The premium, $40.00, should be paid on or before the date of expiration, otherwise the bond will lapse. Kindly have the certificate below filled in and signed, and forward with remittance for premium, when the renewal receipts will be sent to you.

"Yours respectfully,
"THEOPHILUS SPROULL, President."

To this was attached the certificate referred to in the notice.

These certificates were all in the same form and were all filled out in the same way and returned to the trust company. The last certificate was as follows :

" To THE EQUITABLE TRUST COMPANY OF PITTSBURG :

" This is to certify that on the 10th day of April, 1903, the books and accounts of Mr. James H. Ekas, in our employ as Bookkeeper, were examined by us and that we found them correct in every respect, and all moneys handled by him accounted for to the best of our knowledge and belief. He has performed his duties in an acceptable and satisfactory manner. We know of nothing in his habits or antecedents affecting unfavorably his title to confidence, and we know of no reason why the guarantee bond issued on his behalf by The Equitable Trust Company of Pittsburg should not be continued.

　　　　　　　　　　　　"(Signature) O. C. CAMP."

" On behalf of National Bank of Tarentum, Employer, His salary is now $900. Dated at Tarentum, Pa., April 10, 1903."

It was provided in the bond that in case of its extension the company should be liable for any dishonest act of the employee occurring between the original date of the bond, and the limit of the extension. In June, 1904, it was found that Ekas had been systematically defrauding the bank, and the amount of his defalcation was subsequently fixed at $9,200, for the recovery of which sum this suit was brought upon the bond. The trust company defended on the ground that the statements contained in the certificates as to the examination of his accounts were untrue, and that therefore the defendant could not be held liable on the bond which had been issued or extended upon the faith of the representations in the certificates.

The trial judge refused binding instructions for either plaintiff or defendant, and submitted to the jury two questions, (1) Whether the bank must be considered to have authorized its cashier to sign the renewal certificates, and (2) whether the statements in these certificates were untrue or substantially true. The verdict was for the defendant, and judgment was entered thereon. Plaintiff has appealed, and by the assignments of error raises substantially but one question, and that

is as to whether it was entitled to binding instructions in its favor.

It was not shown by the testimony that the board of directors knew of the making of the certificates at the time they were made by the cashier. But it clearly appears that they were made in response to a written inquiry addressed to the bank, which was received by the bank, and was answered by its executive officer, who was charged with the business of conducting its correspondence. We have no doubt whatever but that the making of the certificate in each case was an act done in the regular course of business of the bank, by its proper officer authorized to represent it in that respect, and dealing with the surety company for and on behalf of the bank. The information asked for by the trust company was entirely proper for its guidance in the transaction, and the renewal of the bond from year to year, was without doubt made upon the faith of the statements contained in the certificate. The bank cannot be heard in disavowal of the representations made by its executive officer, which led the defendant company to agree to continue its responsibility. It certainly cannot be permitted to claim the benefit of the action of its cashier in procuring from the trust company the various extensions of the bond, and at the same time repudiate the terms of the representations made by him for that purpose.

It is apparent from the evidence in this case that the directors gave but scant personal attention to the management of the bank, and that the control of its affairs was left largely to the cashier. The board of directors met infrequently, sometimes only once a month. There is no question but that the action of the cashier in making the certificates was something which he might very properly have been authorized by the board of directors to do, had the matter been brought to their attention. Beyond a doubt the board would have authorized the making of any proper certificate for the renewal of the bond, just as they did in the first application. The law is well settled that where the directors of a bank, through long usage, permit the cashier to act without their express authority, in matters in which they might lawfully authorize him to act, they cannot, after such action upon his part, be heard to deny his authority, to the detriment of those who have relied upon

it.  See Morse on Banks, sec. 165, paragraph c; Davenport v.
Stone, 104 Mich. 521.  In the present case, when the defalca-
tion was finally discovered by means of an audit which should
have been made years before, it was the cashier, acting in be-
half of the bank as before, who presented the claim to the de-
fendant company.  We are fully satisfied that the evidence
was ample to justify the jury in finding that the cashier had
authority to make the certificates, and that his action in so
doing was binding upon the bank.

Turning now to the contents of the certificates, we find set
forth in each of them, that on or about their dates, the books
and accounts of Ekas were examined and found correct in
every respect.  This statement was repeated from year to year
during the period of the defalcations for which recovery is
sought.  And yet the statement of claim filed in this case,
based on the results of the audit, shows that during the first
year of the operation of the bond, a sum aggregating $1,100
was abstracted by the bookkeeper in smaller amounts, period-
ically taken with almost monthly regularity, and covered in
the books by raising the figures of his accounts; in the second
year the process was repeated, and a total of $1,600 was taken
in the same way; in the third year the amount ran up to
$1,800, and in the remaining years of the period the sums
taken and covered in the accounts in the same way were
sufficient to bring the aggregate loss to the bank up to $9,200.
The method pursued by Ekas was the simple one of changing
the footings upon his journal enough to cover the amount of
his shortage, and posting the altered amount to the general
ledger, leaving the postings to the individual ledger untouched.
Had an effective audit, similar to the one which was finally
made, been made by the bank at any time during any one of
the years in which the shortages occurred, or had any exami-
nation which included a comparison of the aggregate footings
of the individual ledger with those of the general ledger, been
made, it would have shown the discrepancy, and a careful
scrutiny would have revealed the fraudulent practices of the
bookkeeper.  The necessity for such a comparison upon the
part of those in charge of the bank, would be obvious to any-
one with the most elementary knowledge of the keeping of
banking accounts.  It appears further from the testimony

that the trial balances as taken from the ledger and presented from time to time by Ekas were out of balance, and that the errors were allowed to go uncorrected. This in itself was notice that something was wrong, and should have prevented the issue of any such certificate as was given to the defendant company. The cashier testified that if a trial balance had been taken from the individual ledger, and compared with the general ledger, at any time during the existence of the shortages, the discrepancy would have been discovered, if the trial balance had been taken correctly. Yet the evidence shows that, in the face of these admitted irregularities, and in the absence of any genuine or thorough audit of the books and accounts, in answer to its inquiry year after year, the trust company received from the bank the certificate of its executive officer, that the books and accounts of Ekas had been examined and found correct in every respect. If the jury credited the undisputed evidence in this case, it could have reached no other conclusion than that which it did, in its finding that the certificates were in fact untrue, and misleading to the defendant company.

The evidence as to the entries made by the bookkeeper in the books of the bank, and as to the character of the examinations of the accounts by the board of directors, and with respect to the certificates made by the cashier, was all relevant and competent testimony, and was properly admitted by the trial judge. Nor do we see any error in the portions of the charge to the jury to which exception has been taken.

The assignments of error are all overruled, and the judgment is affirmed.