## Brown et al., Appellants, v. Mount Holly Nat. Bank.

*Banks and banking—Cashier—Powers of cashier—Presumption of knowledge—Letter of credit—Guaranty against loss from issuance of letter of credit—Course of dealing—Ultra vires.*

1. The cashier of a bank is its chief financial agent, through whom its principal financial dealings are conducted in accordance with the general usage, practice and course of business of banks.

2. The acts of the cashier within the scope of such general usage will bind the corporation in its business dealings with third persons without notice of limitation on the authority of the officer.

3. A bank is not bound by the acts of its cashier which are not within his apparent authority, or the ordinary scope of his duties, which the bank has neither authorized nor ratified; and those who deal with the bank are presumed to know the extent of his general authority.

4. The responsible conduct and management of the affairs of the bank which call for the exercise of a high degree of care, knowledge and experience and a semi-judicial discretion which demand general business qualifications of a high order are not, and never have been held to be, appurtenant to the office of a cashier of a bank.

5. The cashier is properly the executive agent of the directors who are responsible for the soundness of the action resolved upon.

6. The issuance of letters of credit are not within the range of the acts which a cashier may perform without authority of the directors.

7. In the absence of any authority in the by-laws or any express authority from the directors, the cashier of a national bank has no power to execute a request to other banks, or to private bankers, to issue letters of credit for its account in accordance with circular No. 260 of the Federal Reserve Board, and to indemnify such bank or bankers against any loss which they may suffer by reason of the issuance of such letters of credit.

8. In such case the directors will not be presumed to have ratified the act of the cashier because of commissions paid to the bank on account of the transaction, where it appears that the cashier concealed the transaction by falsifying the books and that the directors had no knowledge of the receipt of the commissions, and were in fact not negligent or careless in failing to detect the transactions from the books.

9. The authority of the cashier to make the contract is not implied from a course of dealing between the parties wherein the cashier issued many other letters of credit under identical conditions covering a period of more than two years.

Argued December 1, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 270, Jan. T., 1926, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., March T., 1924, No. 8938, for defendant on case tried by the court without a jury, in suit of James Brown et al., copartners, trading

as Brown Brothers & Co. v. Mount Holly Nat. Bank. Affirmed.

**Assumpsit for breach of contract.** Before FINLET-TER, J.

The facts appear by the opinion of the Supreme Court. Judgment for defendant. Plaintiffs appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Ralph B. Evans,* of *Evans, Bayard & Frick,* for appellants.—The transactions in question were within the inherent powers of a cashier, which are such as banking practice generally accords to that office: First Nat. Bank v. Bank, 273 Fed. 119; First Nat. Bank v. Bank, 60 N. Y. 278; Auten v. Bank, 174 U. S. 125.

Plaintiff proved the transactions in question were within the ordinary powers of a cashier: Power v. Bowdle, 21 L. R. A. 328; Carter v. Coal Co., 77 Pa. 286; Adams v. Ins. Co., 95 Pa. 348.

The presumption that a cashier has authority ordinarily incident to the office is conclusive in favor of those dealing without knowledge of any limitation of such authority: Auten v. Bank, 174 U. S. 125.

The transactions in question were neither illegal nor unusual: Border Nat. Bank v. Bank, 282 Fed. 73.

There is no limitation of the cashier's authority in the by-laws nor would any such limitation be binding upon plaintiff: Millward Cliff Cracker Co.'s Est., 161 Pa. 157; Putnam v. Oil Co., 272 Pa. 301.

The cashier's authority must be implied from the long course of dealing: Martin v. Webb, 110 U. S. 7; Nat. Bank v. Trust Co., 223 Pa. 328.

The transaction was not ultra vires: Merchants Bank v. Bank, 77 U. S. 604; Robertson v. Downing, 127 U. S. 607; U. S. v. Hermanosy Compania, 209 U. S. 338.

*Walter Lee Sheppard,* with him *Porter, Foulkrod & McCullagh,* for appellee.—The agency form contract, sued upon by plaintiff bank, is ultra vires of the powers of defendant bank: First Nat. Bank v. Missouri, 263 U. S. 640; First Nat. Bank of Brunswick v. Bank, 212 Pa. 238; Central Trans. Co. v. Car Co., 139 U. S. 24.

The "agency form" contract, sued on by plaintiff bank, is not within the implied or express powers of the cashier: U. S. v. Bank, 62 U. S. 356; Lehigh Val. Nat. Bank v. Rapp, 286 Pa. 29.

The authority expressly withheld from the cashier of defendant bank was never supplied by ratification or estoppel: First Nat. Bank v. Hotel Co., 226 Pa. 292; First Nat. Bank of Allentown v. Hoch, 89 Pa. 324; Bangor & Portland Ry. v. Slate Co., 203 Pa. 6; Twelfth St. Market v. Jackson, 102 Pa. 269; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184.

OPINION BY MR. JUSTICE FRAZER, March 14, 1927:

Plaintiffs are private bankers engaged in business in Philadelphia and other cities. The West Indies Importing Company applied to them for letters of credit to be used in connection with its importing business. Plaintiffs suggested to applicant the necessity of having letters issued through its bank, whereupon the matter was taken up with the cashier of the Mt. Holly National Bank, the defendant, in which bank the West Indies Importing Company was a depositor. Blank forms were furnished by plaintiffs and as a result of negotiations the cashier of the Mt. Holly National Bank forwarded to plaintiffs an application for the desired accommodation, signed "Mt. Holly National Bank, A. B. Walters, cashier," and requesting plaintiffs "as our agents and attorneys in fact to open letter of credit......on behalf of West Indies Importing Company upon the terms and conditions stated in the obligation executed by the West Indies Importing Company," and setting forth that in consideration of such action "we hereby covenant and

agree with you that as principal we will, prior to the maturity of any drafts or payments which may be due under the said credit, place you in funds to meet the same, and will indemnify and save you harmless from and against any loss and damage which you may suffer by reason of the issuance of said credit or the negotiation of any draft thereunder.......

"This authorization is signed by us pursuant to the suggestions contained in circular No. 260, issued by the Federal Reserve Bank, relating to authority of national banks to issue or procure the issue of letters of credit."

According to this arrangement plaintiffs issued a large number of letters of credit and accepted and paid drafts thereunder amounting in all to approximately $700,000, the highest amount of credit extended at any one time being about $125,000. On the last four transactions plaintiffs sustained losses aggregating $55,135.75 by reason of the diversion of property and funds by the West Indies Importing Company, and, on failure of defendant to reimburse them, the present action was commenced.

The defense set up was that the contracts were executed by defendant's cashier, Walters, without authority and without the knowledge of its board of directors, and that the contracts were ultra vires. The case was, by agreement, tried before the court below without a jury under the provisions of the Act of April 22, 1874, P. L. 109. The trial judge found in favor of defendant, holding the cashier was without authority to make the contract for the issuing of the letters of credit under which the claim arose. Exceptions were filed and dismissed, and plaintiffs appealed.

So far as the facts are concerned, the findings of the trial judge, being supported by evidence, are conclusive. Furthermore, there was no real dispute as to the relevant facts on which the decision rested, the errors complained of being to the conclusions of law based on the findings, rather than to the facts themselves.

It is undisputed, the cashier did not have express power to enter into the transactions in question. The by-laws of defendant delegated to a discount committee the power to make loans, discount and purchase bills, notes, etc., and to buy and sell bills of exchange and other securities. It was also provided that notes should not be discounted or loans or investments made, except at regular meetings of the board of directors, without the consent of the discount committee as hereafter indicated. The court below found the arrangement was made with plaintiffs by the cashier without authority from either the bank's discount committee or its board of directors, and that none of the directors had knowledge of the issuing of the letters of credit until after the loss occurred and claim made for reimbursement. Notwithstanding such absence of express authority on the part of the cashier or knowledge on the part of the directors, plaintiffs argue that the cashier had inherent authority by virtue of his office to enter into the transaction on behalf of the bank, and consequently his acts were binding on it regardless of whether they were previously authorized or subsequently ratified.

The procedure followed by plaintiffs and defendant's cashier in this case was the result of a circular letter issued by the Federal Reserve Board, in May, 1921, with respect to the then existing practice of national banks in guaranteeing letters of credit and acceptances executed for their customers by correspondent banks.

A question had arisen as to the authority of national banks to make such guaranties or accommodation endorsements and the letter was issued to define the attitude of the Federal Reserve Board in such matters. After discussion of the question, the board stated its conclusion that national banks were without authority to guarantee or act as surety upon letters of credit, or to endorse acceptances for accommodation, and that directors undertaking to make such contract assumed the risk of being held personally liable for resulting loss.

It was suggested, however, that a bank might purchase an acceptance and immediately resell it with its endorsement, inasmuch as such power was incident to its power to negotiate acceptances, and that in the opinion of the board, national banks might lend their credit by entering into an agreement with its correspondent in another city, whereby the correspondent would agree, as its agent, to issue a letter of credit for or on its account as an undisclosed principal. In such case the latter's name would not appear on the letter of credit, but the correspondent bank would look to it for reimbursement under the collateral agency agreement. Conformable to this suggestion the arrangement was made between plaintiffs and defendant's cashier as appears in the letter above mentioned.

It should be observed that the Federal Reserve Board, in the circular letter referred to above, did not have power and did not pretend to decide the legality of the method suggested, but expressly stated that the question whether a national bank could legally appoint an agent to issue a letter of credit, and accept drafts in the manner suggested, was one for the determination of the courts. There was no intimation in the letter that such authority, if it existed, was one which would come within the usual and ordinary routine of business, and reasonably be presumed to be within the implied powers of the cashier. On the contrary, the general effect of the letter shows clearly that, in the opinion of the board, the power, if it existed, was an unusual one, and consequently one which should require the careful consideration of bank officials. We refer to this because of its bearing on the question of the inherent powers of a cashier to transact such business as is customarily transacted by such officer, according to the general practice, in the course of business of banks.

The cashier of a bank is its chief financial agent through whom its principal financial dealings are conducted in accordance with the general usage, practice

and course of business of banks (Lloyd v. West Branch Bank, 15 Pa. 172, 174; First Nat. Bank v. Mercantile Nat. Bank, 273 Fed. 119, 129) and accordingly his acts, within the scope of such general usage, will bind the corporation in its business dealings with third persons without notice of limitation on the authority of the officer. The bank, however, is not bound by acts which are not within the apparent authority of the cashier, or the ordinary scope of his duties, which the bank has neither authorized nor ratified, and those who deal with the bank are presumed to know the extent of his general authority.

We find nothing usual or customary in the transactions here in question. On the contrary it was the undertaking by a national bank of a line of business comparatively new and as to the legality of which there was grave doubt. The method theretofore adopted to accomplish the same purpose was decided by the Federal Reserve Board to be, not only beyond the power of the cashier, but also beyond the power of the bank itself. The new method suggested by the board was properly characterized by the court below as unusual and unprecedented. It contemplated the appointment of an agent to act for the bank at a distant place and to exercise discretionary powers with reference to the release of collaterals. The liabilities incurred under the letters of credit were far in excess of the legal loan limit to a single borrower, it appearing that the combined capital and surplus of defendant bank was $175,000, thus limiting the loan to any single customer to an amount not exceeding $17,500. Of this plaintiffs were required to take notice. Surely the contract here involved was, under the circumstances, not one of the usual and ordinary business transactions falling within the inherent or implied powers of a cashier by virtue of his office.

An excellent statement of the powers and duties of the cashier of a bank is found in the following extract

from Morse on Banking, section 152: "The office of the cashier is strictly executive. He is the business officer of the bank, but in the sense of one who transacts the business, not of one who regulates and controls it. The great difficulty which has been experienced in defining his exact functions has always lain in the necessity of giving him sufficient practical power to enable him to conduct the daily routine of business, without trespassing upon the domain of discretionary authority which pertains exclusively, and for the most part inalienably, to the directors. Acts which demand only confidence in the integrity of the official, and familiarity with the forms and customs of business, acts strictly of performance which do not rise to the importance of the semi-judicial character, are those which he is properly delegated to do. But the responsible conduct and management of the affairs of the institution upon the soundness and wisdom of which its prosperity and success depend, which call for the exercise of a high degree of care, knowledge and experience, and a semi-judicial discretion, which demand general business qualifications of a high order, are not, and never have been held to be, appurtenant to the office of cashier. He is properly the executive agent of the directors. It is his duty to carry out what they devise. They are responsible for the soundness of the action resolved upon; he is responsible for the honesty, accuracy, regularity and skill with which that action is carried out. They are the mind and he is the hands of the corporation. They may decide to make a certain loan or discount, to sell or mortgage corporate property. He will pay over the money, take the borrower's promissory note, and see that it is in proper form." It has been held that a cashier has no inherent authority to make discounts or loans except on approved marketable collateral: United States v. Dunn, 6 Peters 21, 59; Morse on Banking, vol. 1, section 117; United States Bank v. Bank of Columbus, 21 How. 356, 364. The matter of discounting commercial paper being pri-

marily a function of the directors, it is for them to fix such conditions as they may deem proper for loaning the bank's money or credit (Mutual Trust Co. v. Stern, 235 Pa. 202, 204; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184, 188; Bank of Hooversville v. Sagerson, 283 Pa. 406, 414; Lehigh Valley National Bank v. Rapp et al., 286 Pa. 29) and had the cashier been clothed with authority to make the contract in question, this would not have conferred on him power to delegate such authority to another. An agent who is invested with power to exercise judgment or discretion in the performance of his duties is not thereby clothed with authority to delegate such duties to another without the consent of his principal: United States v. City Bank of Columbus, 62 U. S. 356, 364; Locke's App., 72 Pa. 491; 2 C. J. 685, and cases cited.

The inherent authority or power which the cashier of a bank may be said to possess is that authority or power which comes to him as the incumbent of the office of cashier. By long and universal usage, certain functions are recognized as belonging to the cashier which have been judicially ascertained and declared to be inherent in the office without regard to governing statutes, charters or rules of the corporation: Thompson's Law of Private Corporations, section 1525. In Magee on Banks and Banking, 166, it is said, "Thus, such inherent power will allow the cashier to do admittedly anything that is within the scope of his authority, subject of course to whatever limitations may be legally imposed upon him by the board of directors."

Had the cashier of defendant bank such inherent power as cashier, so as to allow him, as within the scope of his authority, to execute the applications for letters of credit, such as were executed in these instances? Of course, if the contracts accompanying the applications made by the cashier, and resulting transactions, were ultra vires of defendant bank, the question of the cashier's authority is no longer of moment. If they were

not ultra vires, then the question might properly be: Had the cashier inherent power to make not only these particular applications for letters of credit but also had he such power to make any applications generally for such letters? It is not questioned that applications for, and transactions under, letters of credit, both travellers and commercial, are common among and between banks, and it is in fact a not-at-all uncommon practice for cashiers to make such applications and forward them, executed only by the cashier and unaccompanied by directorial or authorizing resolutions adopted by the board of directors. Following applications executed in that fashion, it has long been usual for credits to be opened as requested. But these transactions are never carried on on the ground that the cashier has a right and power merely by virtue of his office to engage in them. It is usually assumed he enters into such engagements by the direction and permission of the directors of the bank. Letters of credit are not within the range of the acts the cashier may perform without authority of the directors, any more than is the discount of commercial paper, the latter being primarily a function of the directors of a bank, and it is for them to fix such special conditions as they may deem proper for loaning the bank's money; individual officers have no authority, unless given in some legal form to make special arrangements or promises in regard thereto: Lehigh Valley National Bank v. Rapp, 286 Pa. 29. That the power to lend the money of the bank or to discount evidences of debt lies exclusively with the directors, is indicated by all authorities: Lehigh Valley Bank v. Rapp, supra; Mutual Trust Company v. Stern, 235 Pa. 202; First National Bank v. Baer, 277 Pa. 184. Although it is implied from the terms of the law that a national bank has the power to issue letters of credit, such power lies primarily only with the bank's directors; the bank is to "exercise by its board of directors......all such incidental powers;" or they may be exercised by "duly authorized

officers or agents." Clearly such officers and agents can be duly authorized only by the power immediately above them—the board of directors. Section 16 of the by-laws of defendant bank provides: "No notes shall be discounted or any loan made or authorized, save at regular meetings of the board, without the consent of the discount committee," with certain exceptions not relevant here.

As appears by the testimony, the discount committee of defendant bank acted under the control of the board of directors; and at other times, that is, without a meeting of the board of directors, no discounts, loans or investments could be made or authorized by any officer of the bank "without the consent of the discount committee and the board of directors." With such precaution taken to guard the interests of the bank, it would be a flimsy assumption to say that, notwithstanding the prudence and foresight shown in the by-laws, the bank directors could have intended to leave to the whim or the discretion of the cashier solely so complex, unusual (for their bank) and important a transaction as dealing with letters of credit. When he engaged in such transactions, whence came his power or his authority? Nowhere in any of the authorities we have examined have we found he had inherent power to do so; the authorities universally hold the contrary. He could then receive such power only by delegation, by authorization. Nowhere in all the testimony is there proof that such authority was delegated to him. He did not receive it from the directors, either by formal directorial resolution or in any other manner, and we find nothing on the minutes of the meetings of the board of directors to the contrary. In fact, the directors and officers of the bank were totally unaware of the transactions and were purposely kept in such ignorance by the adroit system of concealment the cashier adopted and carried out to deceive them.

The cashier was without implied power to issue the letters of credit here in controversy and there was no acquiescence in and no knowledge of these transactions on the part of the directors of defendant bank. The testimony fully warrants the finding of the court below to this effect.

In view of the finding that none of the directors had knowledge of the issuance of the letters of credit by the cashier and that he was not invested with inherent authority to issue such letters, it becomes unnecessary to enter into a discussion of the question of ratification. Plaintiffs argue, however, that a proper attention to the affairs of the bank on the part of the directors, would have disclosed the existence of the credits, because the books showed commissions paid by plaintiffs to defendant from time to time made up of numerous small items and amounting in all to $960. The trial judge found the cashier purposely concealed these transactions, and in making out financial reports stated no liabilities existed of the character here in question and in entering commissions on the books they were mingled with discounts and bore such meager description that one examining the accounts would be led to assume the items were ordinary discounts. The court also found as a fact that the directors were not negligent or careless in failing to detect the transactions from the books, but that they met with regularity and performed their duties in a proper and businesslike manner, and did nothing tending to estop them from denying the validity of the cashier's acts in causing the issuance of the letters of credit here in question.

Plaintiffs also argue that the authority of defendant's cashier to execute the letters of credit is necessarily implied from the course of dealing between the parties wherein defendant's cashier issued many other letters of credit under identical conditions, covering a period of more than two years. It is true that where bank directors, through long usage, permit their cashier to act in

certain matters without express authority, they cannot subsequently deny his authority to defend the claims of third persons who have acted in reliance on such action: Tarentum National Bank v. Equitable Trust Co., 223 Pa. 328, 333. And if the directors of defendant bank had known, or by the exercise of reasonable and proper diligence could have known, of the transactions between plaintiffs and their cashier, defendant would not now be permitted to defend on the ground of their want of knowledge, but would be presumed to have ratified the acts of their agent. The undisputed facts, are that the directors did not discover the unauthorized transactions of the cashier until after the loss occurred, and, in view of the findings of the court below, heretofore referred to, the directors cannot be charged with neglect of duty because they failed to discover the conduct of the cashier. We thus have a mere repetition of the unauthorized action without the knowledge of the directors, and while the frequency of the acts might justify an inference that they were aware of them and acquiesced therein, such inference was rebutted by proof that they knew nothing of the transactions and that the cashier had in fact no authority to enter into such contracts.

The judgment is affirmed at costs of appellants.