## Warren Savings Bank & Trust Co. *v.* Foley, Appellant.

Argued September 25, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*A. B. Jobson,* with him *G. G. Martin,* for appellant.— Defendant presented a meritorious defense and, under the allegations and the proofs in support thereof, the judgment should have been opened: Meyerhoff v. Daniels, 173 Pa. 555; Musser v. Hyde, 2 W. & S. 314; Hunt v. Moore, 2 Pa. 105; Mundorff v. Wickersham, 63 Pa. 87; Keough v. Leslie, 92 Pa. 424; Griswold v. Gebbie, 126 Pa. 353.

*W. S. Clark,* with him *J. H. Alexander* and *R. W. Stone,* for appellee.—The lower court exercised a sound judicial discretion in refusing to open the judgments as

to T. J. Foley and D. D. Foley: O'Hara v. Baum, 82 Pa. 416; Humphreys v. Tosier, 154 Pa. 410; Cosgrove v. Cumming, 195 Pa. 497; Bittenbender v. Biesecker, 7 Pa. Superior Ct. 41; Koch v. Biesecker, 7 Pa. Superior Ct. 37; Jenkintown Nat. Bank's App., 124 Pa. 337; Freeman v. Sanner, 11 Pa. Superior Ct. 42; Tinckum's App., 3 Walker 38; Doty v. Doty, 155 Pa. 285; Seaton v. Shaner, 158 Pa. 69; Gump v. Goodwin, 172 Pa. 276; Cruzan v. Hutchison, 210 Pa. 88; Augustine v. Wolf, 215 Pa. 558; Groninger v. Acker, 32 Pa. Superior Ct. 124; Atkins v. Grist, 44 Pa. Superior Ct. 310; Peoples Bank of California v. Stroud, 223 Pa. 33; Jacobosky v. Zborowjan, 46 Pa. Superior Ct. 626; Wolfang v. Shirley, 239 Pa. 408; Schnebel v. Nelson, 238 Pa. 341.

OPINION BY MR. JUSTICE SIMPSON, November 26, 1928:

Plaintiff entered judgment against T. J. Foley and Ellen M., his wife, on a bond and warrant of attorney executed by them. Upon considering the depositions taken on a rule to open the judgment, the court struck off the judgment against the wife, but discharged the rule so far as concerned the husband. He having died, his executrix prosecutes the present appeal.

The court below gives two reasons for refusing to open the judgment as to decedent: (1) Because of laches in applying for relief, and (2) Because the evidence was insufficient to justify the submission of any controlling question of fact to a jury. As to the first of these reasons, it need only be said that no issue upon this point was raised by the petition and answer, and hence it should not have been considered: Fisher v. King, 153 Pa. 3; Bauer v. Hill, 267 Pa. 559, 563-4; Shapiro v. Malarkey, 278 Pa. 78. The second reason, however, raises the real issue between the parties. Upon it, since the admitted signature of decedent to the judgment bond made out a prima facie case for plaintiff, the burden of proof was upon decedent—a burden especially heavy by

reason of the further facts that he had signed also the five promissory notes, payment of which the bond was given to secure, and the amounts specified in them had been given by plaintiff to decedent, or to the firm of Chiodo & Foley, of which decedent was a member, and had been used in the business of the partnership.

Stating the oral evidence most favorably to decedent, so far as concerns the disputed facts, the following appear: Fred C. Chiodo had made a bid to construct an improved county road for the sum of $164,489.94, and had delivered with the bid a check for $4,000, as required by the terms of the bidding. The check, which was to be returned when Chiodo executed a contract for the work and gave a bond for its completion, had been drawn on the plaintiff bank and had been certified by it as good. It had protected itself from loss, however, by taking Chiodo's note with stock of his as collateral. The bid had been accepted; but Chiodo was experiencing difficulty in obtaining the required bond for completion. A friend of his saw decedent, T. J. Foley, and his brother, D. D. Foley, and offered them a half interest in the contract, if they would become partners with Chiodo in relation to it, and help him to obtain the bond. He told them he called as the result of a conversation with the president of the bank. The Foleys thereupon saw the president, but his term of office was about to expire, and he referred them to the incoming president. According to the testimony of the Foleys, they were told by one or the other of these officers, that Chiodo had sufficient capital to enable him to do the work; had made money on a previous road contract; was an experienced and competent road builder and cement man; that the bank had in its possession and under its control $21,500 worth of gilt-edged securities and $4,500 in cash, belonging to Chiodo, which it would retain and apply to Chiodo's share of the firm's obligations, if they entered into partnership with him, and that in no event would

the bank hold decedent and his brother liable for more than one-half of the partnership's liabilities to it. They say that in reliance on these promises, they entered into the partnership with Chiodo. Immediately thereafter the bank took a note for $25,000, signed by the three members of the firm, and then wrote to the local representative of a bonding company, that it held this amount as collateral to insure the completion of the contract. The partners, in the presence of each other, executed and delivered to the bonding company separate affidavits as to their financial standing, Chiodo's stating that his net assets were $17,800, decedent that his were $31,125, and the brother that his were $62,875. This occurred on the day the partners gave their first obligation to the bank and before anything had been advanced on account of it. The bonding company also took from the firm an indemnification agreement, by which it was given the right to take over the performance of the work, if the firm at any time became in default; and, in that event, was authorized to use the firm's machinery and materials then on hand. The bonding company thereupon executed a surety bond for the completion of the work, and the contract was duly awarded to Chiodo.

From time to time the bank loaned the firm various sums of money, including the amounts specified in the bond upon which judgment was entered, taking in each instance a note or bond signed by decedent and others, some of them being renewed several times, the renewal papers being likewise so signed. For some of these obligations mortgages were also given. On every occasion decedent, by the terms of the writings, made himself and his properties liable for the full amount of the loans and renewals. Nevertheless he now claims that on each of those occasions, and there were a number of them, the bank president assured decedent that the bank would not hold him or his property for more than one-half of the amounts specified in the documents, but would it-

self be liable for the other half thereof. Because of these statements, decedent and his brother said they executed the various papers expressing full liability. It is not averred that any other officer or director of the bank knew of these alleged statements and promises. The only evidence on this point is that the loans were made with the approval of the discount committee, without their having, so far as appears, any information in regard to such matters.

For some reason, not made clear in the evidence, the construction of the road did not progress as rapidly as required by the contract. In December, 1923, when work ceased because of the cold weather, the time for completion had expired and the road had been only partially built. The state highway department, to which the contract gave control of the matter, made complaints to the firm and to the bonding company. Upon investigation, the latter learned that the partnership was heavily indebted to the bank, to materialmen and for machinery used in the performance of the work, some of which creditors were suing or threatening to sue; and that the firm was without ready money to pay them or to continue the work in the spring. The bonding company thereupon announced its intention to take over the contract and complete its performance by other contractors, unless the firm made clear that it could obtain money to pay its debts and promptly proceed with the work.

Decedent thereupon applied to the bank for still further advances, which the latter finally agreed to make, if it could be secured in so doing, and the members of the firm executed an agreement satisfactory to the bonding company. After much negotiation, such an agreement was signed by them on February 21, 1924. It recites that it was entered into "at the earnest solicitation [of the members of the firm] and with the hope that by

so doing the loss to be sustained by [them] ......will be materially reduced from that which they would suffer" if the bonding company took over the contract and itself had the balance of the work done.  We need not quote or state the provisions of this elaborate agreement; it suffices that because of it work was resumed and the contract completed under the superintendence of one selected in the first instance by decedent and his brother; that for the debts already due and those incurred in the completion, checks were drawn by members of the firm, countersigned by a representative of the bonding company and paid by the bank, and that the latter received the subsequent amounts paid for the work, applying them on account of the indebtedness of the partners to it but leaving a balance still due.  Admittedly, decedent's estate is liable for this balance, unless the court below abused its discretion in refusing to open the judgment for one or more of the three reasons specified in appellant's brief.

The first of these reasons is because, as contended by appellant, decedent was misled into becoming a member of the firm by the foregoing untrue statements of plaintiff's president as to Chiodo's means, experience and competency.  Assuming the president made those statements, though he strenuously denies it, they were such mere matters of opinion as to provide no basis for action or defense, unless it was shown not only that it was intended decedent should, and he did, in fact, act on them to his injury, but also that the president knew they were false when he made them, or did so with such conscious ignorance of their truth as to be equivalent to a falsehood: Cox v. Highley, 100 Pa. 249; Griswold v. Gebbie, 126 Pa. 353, 363.  There was no proof of the president's wrongdoing in either respect; nor, indeed, of decedent's ignorance.  On the contrary the latter testified he was told, before he entered into the partnership, that Chiodo did not have sufficient capital to

handle the contract; and, moreover, he must have known this fact by reason of his presence when Chiodo swore to his assets and liabilities, to induce the bonding company to execute the bond for completion. Hence, the president himself incurred no liability for the opinions he expressed on these points, even if they were erroneous; and, a fortiori, the bank did not.

The second reason alleged against plaintiff's right to recover is that decedent entered into the partnership on the faith of the false statement of the president of the bank as to the assets of Chiodo held by it, and of the promise, oft-repeated, that those assets only would be held liable for his one-half share of the partnership obligations. The making of this statement and those promises were also denied; but, assuming they were made, the legal conclusion attempted to be drawn therefrom wholly fails for lack of proof of authority in the president to make them, or of such an interest by the bank as justified its executive officer in dealing fully with the matter without authority from the board of directors. No attempt was made to prove such an interest; and no proof of authority was given, appellant simply claiming that, from the facts already stated, a jury would have been justified in finding its existence. To this we do not agree. On the contrary, we have steadily held to the rule that the officers of a bank have no general authority to loan its money upon special conditions, this being primarily a function of its board of directors: Lehigh Valley National Bank v. Rapp, 286 Pa. 29; Allen v. First National Bank of Warren, 127 Pa. 51; First National Bank of Pittston v. Lawall, 280 Pa. 407; First National Bank of Hooversville v. Sagerson, 283 Pa. 406; Brown v. Mt. Holly National Bank, 288 Pa. 478. So far as appears, the board never acted in regard to the matter.

The third reason suggested is "that in no event could plaintiff hold [decedent's estate] liable for more than

one-half of the partnership obligations of Chiodo & Foley to plaintiff." This claim is based solely on the promises alleged to have been made by plaintiff's president, and hence, for the reasons already given, that contention fails also.

Out of deference to the earnest argument of appellant's counsel, we have read and reread the record and briefs; but can reach no other conclusion than that the order appealed from is right. We have repeatedly said that, in order to require the opening of a judgment, it is not enough that a witness or witnesses swore to facts, which, if they stood alone, would compel the submission of an ordinary contract case to a jury for its consideration. The execution of the note or bond, by virtue of which the judgment is entered, is a potent factor to be considered; especially where, as here, decedent has executed many such documents, none of which should have been signed if his contention is true. It is inconceivable that this should have occurred over and over again, and that on each occasion the president should have used almost the same language as he did every other time; yet that is the exact situation claimed to exist here. Nor is it to be overlooked that so long as money was needed to enable decedent to complete the contract for building the road, he was ready to sign documents which, on his present contention, did not speak the truth, and it was only when he needed no more favors, and was asked to comply with his written obligations, that he tried to cast his share of the loss on plaintiff; in effect to make the bank liable for one-half of the losses, without the right to share in any part of the profits. The facts appearing in this case make clear the wisdom of the true rule, namely, that in determining whether or not a judgment should be opened, the court below is required to weigh the evidence of both parties, consider the credibility of the witnesses, give due effect to writings which cannot be subject to bias or forgetfulness, and, in the ex-

ercise of a sound discretion, decide, as a chancellor, whether or not, in equity and good conscience, defendant has a just defense to the note or bond on which the judgment was entered; and this court, on appeal, will reverse only if an abuse of discretion is shown: Jenkintown National Bank's App., 124 Pa. 337; Cruzan v. Hutchison, 210 Pa. 88; Wolfgang v. Shirley, 239 Pa. 408; Wright v. Linhart, 243 Pa. 221; Stewart v. Stewart, 246 Pa. 344; Johnson v. Nippert, 286 Pa. 175; Reidlinger v. Cameron, 287 Pa. 24; Hale v. Uhl, 293 Pa. 454, 457. Under the facts appearing in this case, it is impossible to conclude that an abuse of discretion has been shown.

The order of the court below is affirmed.