## Rubin v. Goldberg et al.

*Oscar Rosenbaum,* for plaintiff; *Robert F. Bonner,* for defendants.

BROWN, JR., J., October 21, 1932.—The bill prays for the cancellation of a bill of sale of the fixtures, equipment and good-will of a restaurant at No. 1329 Race Street, Philadelphia, purchased by plaintiff from the defendants, Anna Budman and Harry Goldberg, and that the defendants return the moneys paid

by plaintiff, averring, inter alia, that defendants stated that the weekly receipts of the restaurant averaged $200 and that there was no indebtedness upon any merchandise or bills outstanding, which statements were untrue and intended to deceive plaintiff, and in violation of the Sales in Bulk Act.

The answers of the defendants aver that the weekly receipts of the restaurant averaged $200 and that there was no indebtedness on the fixtures and equipment, and only small current bills outstanding, for the payment of which $300 paid on account of the purchase price was left with the defendant Adolf Blau, the agent, and deny there was any violation of the Sales in Bulk Act.

From the admissions in the pleadings and the testimony, I make the following

### Findings of fact

1. On May 5, 1932, the defendants, Harry Goldberg and Anna Budman, agreed to sell and plaintiff agreed to purchase the fixtures, equipment and good-will of the lunchroom at No. 1329 Race Street, Philadelphia, for the sum of $1200, $300 to be paid at the time of the signing of the agreement and the balance at the time of settlement on or before May 23, 1932. A true and correct copy of this written agreement is exhibit "A" to the bill and is incorporated herein by reference thereto.

2. On May 7, 1932, Harry Goldberg and Anna Budman executed a bill of sale to plaintiff for the fixtures, equipment and good-will of the restaurant. A true and correct copy of this bill of sale is exhibit "B" to the bill and is incorporated herein by reference thereto.

3. On Saturday, May 7, 1932, when the bill of sale was executed and the $300 paid on account, this sum, in accordance with the oral agreement of the parties, was left with the defendant Adolf Blau, the agent, for the payment of small outstanding current bills due on the following Monday for ice, bread, butter, cheese and window cleaning.

4. On and before June 16, 1932, Blau paid all of these bills, which totaled $33.25.

### Discussion

The bill asks that the bill of sale of the fixtures, equipment and good-will of the resturant be declared null and void because in violation of the provisions of the Sales in Bulk Act, in that the vendors in their affidavit to the bill of sale stated "that there are no creditors holding claims due or which shall become due for or on account of goods, wares, merchandise, or fixtures, purchased upon credit, or on account of money borrowed to carry on the business of which said stock or fixtures are a part," and at the time there were outstanding small current bills. It was filed by the purchaser and not by a creditor of the vendors.

There is no provision in the Sales in Bulk Act of May 23, 1919, P. L. 262, giving a purchaser the right to proceed in equity against the vendor. To the contrary, section three provides that when the provisions of the act are not complied with, "then such sale or transfer shall be fraudulent and void, and such purchaser, auctioneer, or agent shall, at the suit of any creditor, be held liable to the creditors of the said vendor as a receiver for the fair value of all the property so bought or sold by him," and limits the time in which a "proceeding at law or equity shall·be brought against the purchaser." Thus, a proceeding in equity must be brought by a creditor. It must also be against the purchaser, and not against the vendor, the purchaser being liable to the latter's creditors. Furthermore, the sale is not absolutely null and of no validity whatsoever, for the word "void" is to be construed as "voidable:" Gibbon v. Arronson et al., 80 Pa. Superior Ct. 36, 39.

"Whether the requirements of the act have been observed or not, the sale, when completed, is perfectly good as between the vendor and purchaser, and if the former has no creditors, or if they are paid by him out of the proceeds of sale, or otherwise, it is good as to the world. To invalidate the sale the vendor's creditors must act . . . and if such proceedings are brought the sale is only invalidated to the extent necessary to pay the vendor's creditors existing at the time the sale was made:" Gibbon *v.* Arronson et al., supra, page 40.

"The purpose of the Act of May 23, 1919, P. L. 262, supplanting that of March 28, 1905, P. L. 62, was to protect creditors against the sale of stock in hand as a whole, to the prejudice of those unpaid, and who could look to the assets alone for the satisfaction of their claims:" George H. West Shoe Co. et al. *v.* Lemish et al., 279 Pa. 414, 417. See, also, Miller *v.* Myers et al., 300 Pa. 192, 199. In these two cases bills in equity were filed by creditors, not by the purchasers, and the latter were held liable as receivers of the property taken over for the benefit of the creditors of the vendors.

"The Act of May 23, 1919, makes it the duty of one about to purchase a stock of goods in bulk, and not in the ordinary course of business, to do certain prescribed things for the protection of the vendor's creditors:" Gibbon *v.* Arronson et al., supra, page 37.

Section one commences: "It shall be the duty of every person who shall bargain for or purchase," before making any payment, to obtain a sworn written statement of the names and addresses of all the vendor's creditors with the amount of the indebtedness due each of them. Likewise, section two begins: "It shall be the duty of the person who shall bargain for or purchase," at least ten days before the completion of the purchase, to notify each of vendor's creditors of the proposed sale, the price to be paid, and to furnish each one with a copy of the statement of creditors. Section three imposes on the purchaser the duty of "paying or seeing to it that the purchase money . . . is applied to the payment of the bona fide claims of the creditors of the vendor," and if he "has reason to believe that the vendor has failed to either furnish a list of all his, her, or its creditors, or furnish the full amounts of the debts due each creditor, or for any other reason the said purchaser . . . is unable to make proper distribution," then he "shall, within ten days after the consummation of said sale, pay the purchase money of said sale, less the expenses of sale, into the court of common pleas of the county in which the place of business of the vendor is situate." The burden of "seeing to it" that the vendor's creditors are paid is placed upon the purchaser, and he may protect himself by paying the money into court. A similar obligation seems to be imposed upon an agent, but in the present case the agent retained the money paid on account, out of which he paid the few small creditors of the vendors.

Section four of the act provides that a vendor "who shall knowingly or wilfully make or deliver, or cause to be made or delivered," the verified written statement provided for in the act, "which shall not include the names of all of the creditors of such vendor, with the correct amount due and to become due to each of them, or which shall contain any false or untrue statement, shall be deemed guilty of a misdemeanor". Hence, if the vendor does not include in the verified written statement required by the act the names of his creditors with the correct amount due or to become due to each of them, he may be proceeded against criminally, but there is no provision therein that he may be sued at law or in equity for failing to observe its terms.

Although the present vendors did not furnish the statement required by the act, plaintiff has not been harmed thereby. Their few small creditors were subsequently paid in full by the agent out of the down payment made by the plain-

374

tiff, and so "the purchase money" was actually "applied to the payment of the bona fide claims of the creditors of the vendor," as contemplated by the act. Plaintiff has not been "compelled to pay" them (i. e., pay a second time), as he might have had to do if they had not been so paid: Gibbon v. Arronson et al., supra, page 39.

Another ground alleged in the bill for declaring the sale void was that the defendants guaranteed the business "to take in" $200 a week, and that it did not do so. There was testimony that the receipts had been in excess of that amount for some weeks prior to the sale. However, the written agreement provided that "in order to prove said amount" plaintiff was permitted "to try out the business for a period of one week." He did not avail himself of this, but insisted upon settlement after two days' observation. It seems to me that as an opportunity was afforded him to find out all about the business, it comes with bad grace for him to complain that the receipts were not as he contemplated. His conduct of the business, as shown by the testimony of a number of witnesses, brought about this result. However, it is unnecessary to discuss this further and to find facts bearing thereon because plaintiff's counsel stated during the trial that "the only question is, was the Sales in Bulk Act complied with?"

I have, therefore, come to the following

### Conclusions of law

1. That plaintiff, as purchaser of the fixtures, equipment and good-will of the restaurant at No. 1329 Race Street, Philadelphia, is not entitled to relief in equity for a violation of the provisions of the Act of May 23, 1919, P. L. 262, relating to sales in bulk.

2. The bill should be dismissed.

### Decree nisi

And now, to wit, October 21, 1932, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill be and it is hereby dismissed.

Plaintiff shall pay the costs.

NOTE.—Exceptions to the foregoing decree were dismissed without opinion by the court in banc on November 30, 1932, and a final decree was entered on December 7, 1932.