Teutonic Building and Loan Association *v.* Stein et ux. (Auerbach et ux., Appels.)

Argued October 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Louis A. J. Robbins,* with him *Benjamin Abramson,* for appellants.

*William H. Steeble* of *Freeman, Fox & Steeble,* for appellee.

OPINION BY RHODES, J., February 26, 1937:

A judgment was entered against Herman Stein, Pearl Stein, his wife, Benjamin Auerbach and Sarah Auerbach, his wife, on a bond accompanying a mortgage. The bond and mortgage were executed by the four defendants to the plaintiff. Benjamin Auerbach and Sarah Auerbach presented a petition to open the judgment. A rule was issued thereon, depositions were taken, and the rule discharged. Sarah Auerbach has appealed.

The petition to open the judgment set forth that the signatures of the petitioners to the bond and warrant and mortgage were obtained from them by a duly authorized agent of the plaintiff upon the representation made by plaintiff's agent at the time of their signing that the writings contained their oral understanding that Sarah Auerbach was giving her home as security to the extent of $500 on a mortgage loan made to her daughter, Pearl Stein, and that her home would be released as security upon the reduction of the mortgage loan from $2,000 to $1,500; that the Stein loan had been reduced to less than $1,500; and that there is no liability on the part of the petitioners on the said mortgage and the judgment entered by the plaintiff on the bond and warrant of attorney.

Plaintiff, in its answer, averred that there was no such agreement as petitioners alleged; that the authority of its agent did not extend to making any such arrangements as asserted by petitioners; and that petitioners were barred by laches.

Appellant admits the execution of the mortgage and the accompanying bond on which judgment was entered; which judgment she now seeks to have opened on the ground that the bond and mortgage were executed by her on the false representation of plaintiff's agent that they contained a limitation of her liability. Where, as here, appellant seeks to strike down her written obligation, she must present evidence that is clear, precise, and indubitable. *Peoples' Bank of California v. Stroud,* 223 Pa. 33, 35, 72 A. 341, 342; *Certelli v. Braum,* 294 Pa. 488, 489, 144 A. 403; *Helzlsouer, to use, v. Golub et al.,* 306 Pa. 474, 478, 160 A. 118, 119.

It appears from the testimony that Herman Stein and Pearl Stein, his wife, the latter a daughter of appellant, applied in writing to the plaintiff building and loan association for a loan of $2,000 to be secured by a mortgage on premises at 6205 North Seventeenth Street, Philadelphia, of which they were the owners. The plaintiff association refused to lend more than $1,500 on the Stein property. Appellant and her husband presented to the plaintiff association an application signed by them for a second mortgage, covering appellant's property at 2940 Cambridge Street, Philadelphia, as additional security for the Stein loan of $2,000. These applications were granted by the plaintiff association on December 23, 1929, and on January 21 and 22, 1930, all the defendants executed a mortgage covering both properties and containing no limitation upon the amount for which any property or any person was to be liable, and at the same time there was executed by the defendants the bond and warrant

on which plaintiff entered judgment on March 9, 1936. The Auerbachs were not able to read or write, excepting that Benjamin Auerbach could sign his name; appellant is about 75 years of age.

The testimony was conflicting. Proof of fraud in connection with the inclusion of appellant's property as security for the entire Stein loan must be found, if at all, in the testimony of Pearl Stein, Herman Stein, and appellant. Other witnesses who testified added nothing to appellant's case. Pearl Stein testified: "A. Well, after that it was agreed we had to sign the papers. We came to Mr. Keehfus and he told us the papers we were signing was only for the five hundred dollar bond to be held until five hundred dollars was paid on the property. Q. Until you had— A. Until we had five hundred dollars paid in on our house, then they would release that bond. Q. The bond of your mother's? A. Yes, the five hundred dollar bond on the property. ...... Q. Did you read the application that was presented to you which identified as having been made up by Mr. Keehfus? A. Well, I did. Yes, I read it. Q. And after Mr. Keehfus told you that the loan was turned down at the December meeting what did you do next? A. He didn't tell me it was turned down. He told me that the only thing that could be done would be to allow me fifteen hundred dollars on the house and I would have to get the additional five hundred dollars as a bond which was to be held and released after I had paid in five hundred dollars on my house. ...... Q. When you signed the bond and mortgage did you examine it? A. You mean did I read the papers? Q. Yes? A. Yes, I read it."

Herman Stein testified: "He [George Keehfus, conveyancer for plaintiff association] told us they could only give a fifteen hundred dollar mortgage but would give the entire two thousand if we could furnish a bond for five hundred dollars which was to be released

when we had five hundred dollars paid into the building and loan, and that bond wasn't to be recorded. ...... We went back and told Mr. Keehfus we could furnish the bond for five hundred dollars until we had five hundred dollars paid into the building and loan when it was to be released, and it was emphasized at that time that the bond was not going to be recorded."

Appellant testified: "Q. Did you sign the papers? A. Yes. Q. Where did you sign the papers? A. At my home. Q. Who was there when you signed that? A. Nobody. Q. Where was your husband? A. He was at the hospital, he was sick at that time. Q. He was sick at that time? A. He was sick, you know, in the hospital. After he came home he was sick and I was sad. I told him in the office, 'Mr. Keehfus, you know I couldn't read, may be I will take a lawyer.' He said, 'It is all right; you believe me so long, you believe me now. As for the five hundred dollars, as soon as you pay me five hundred dollars I give it to you, see.' He said it will be all right; so I went and took out of the Christmas Club five hundred dollars. I signed it. Q. You signed the papers after that conversation with Mr. Keehfus? A. Yes."

The hospital records showed that Benjamin Auerbach went to the hospital December 30, 1929, and left January 21, 1930.

George Keehfus, conveyancer for the plaintiff association, testified that Pearl Stein came to his office relative to a loan from the plaintiff association on her property; that plaintiff association refused to loan $2,000 on the Stein property without additional security; that the Steins and the Auerbachs made the necessary applications which were presented to plaintiff association; that appellant called at his office and stated she wanted to give her property as security for her daughter; that Pearl Stein was present when her father and mother signed the application; that the ap-

plication was explained to the Auerbachs at the time of its execution; that plaintiff association acted favorably upon the applications; that he prepared the bond and mortgage which were executed by the Steins, in his office on January 21, 1930, and the next day by the Auerbachs at their home in the presence of Pearl Stein; that witness' son was also present at the time of their execution and acted as a witness; that the documents were not read by the Auerbachs, but were explained to them by the witness in the presence of Pearl Stein; that settlement was made at the Girard Title and Trust Company on January 23, 1930, by Pearl Stein; that appellant never offered him $500 for a release; that he never said anything to the Auerbachs or Steins about a $500 limitation; and that at the time of the execution of the bond and mortgage by the Auerbachs, in the presence of Mrs. Stein, he advised them that they were giving their property as additional security for the loan to their daughter and son-in-law.

Appellant also testified that she offered the conveyancer for the plaintiff association $500 for release of her property six months after the execution of the bond and mortgage, and that in 1931 she received $750 for matured free stock in the plaintiff association. In this connection her testimony is as follows: "Q. You say you went to Mr. Keehfus? A. Yes, to give him down five hundred dollars what I was holding for Mrs. Stein. Q. You wanted to give him five hundred dollars? A. Yes. Q. On the mortgage loan of your daughter's? A. Yes. Q. What did he say? A. He told me he couldn't do that way. He got to have more to cover the payments, and after that he said 'Give me five hundred dollars. Loan it to me and I will give it back every year.' ...... Q. When was this that you went to see him, how long ago? A. When I gave out the money, the same day. Before I take out the money the same day I got to go to the bank and take out the money.

He told me, 'I will pay you the five hundred dollars for your daughter.' Q. What did he say? A. He said, 'You got to make another application.' That is what he said. He wouldn't do it because he wouldn't make up the papers. He said, 'Loan it to me, my husband didn't need it at that time.' "

On July 19, 1934, appellant and her husband had issued a summons in equity against the plaintiff association, Herman Stein, and Pearl Stein. No further action was taken by appellant until petition to open judgment was filed on March 28, 1936. "While great laches or long delay in making an application to open a judgment is a circumstance of great weight against a petition, that is a matter for the consideration of the tribunal entertaining that proceeding": *Miller Brothers et al. v. Keenan et al.*, 94 Pa. Superior Ct. 79, at page 83. From appellant's testimony it is clear that she displayed no diligence in attempting to enforce her contention.

"In determining whether or not a judgment should be opened, the court below is required to weigh the evidence of both parties, consider the credibility of the witnesses, give due effect to writings which cannot be subject to bias or forgetfulness, and, in the exercise of a sound discretion, decide, as a chancellor, whether or not, in equity and good conscience, defendant has a just defense to the note or bond on which the judgment was entered; and this court, on appeal, will reverse only if an abuse of discretion is shown [cases cited]": *Warren Savings Bank and Trust Co. v. Foley*, 294 Pa. 176, at pages 184, 185, 144 A. 84, at page 87.

It is necessary that the record show more than a mere conflict of evidence to warrant opening a judgment. "The evidence must carry such conviction of truth as to convince the judge that the judgment should be opened and a jury trial awarded: *Mielcuszny et*

*ux. v. Rosol,* 317 Pa. 91 [176 A. 236]. The weight of the evidence and credibility of the witnesses are for the judge who sits as a chancellor: *Jenkintown Nat. Bank's App.,* 124 Pa. 337, 344 [17 A. 2]; *Augustine v. Wolf,* 215 Pa. 558, 562 [64 A. 777]": *Mutual B. & L. Ass'n of Shenandoah v. Walukiewicz et al.,* 322 Pa. 240, at page 242, 185 A. 648, at page 649.

In refusing to open judgment the court below in its opinion stated: "The petitioners seek to set aside the contract embodied in the written bond and mortgage on the ground of fraudulent representations. To do so they must produce clear precise and indubitable evidence of the fraud. ...... The testimony offered by the petitioners and their witnesses in depositions filed in support of the petition falls far short of these requirements and does not justify the opening of the judgment. ...... Even allowing for the age and lack of education of the petitioners their stories are too indefinite and self-contradictory to afford a clear picture of what they claim happened."

In cases of this character, the issues are raised by the petition and answer, and only such testimony as is applicable to the issues so raised will be considered. See *Warren Savings Bank & Trust Co. v. Foley,* supra; *Shapiro et al. v. Malarkey,* 278 Pa. 78, 122 A. 341.

We have carefully examined the record, and we are of the opinion that the conclusion of the court below was proper, and that there was sufficient testimony to support its finding. Appellant has not met the burden placed upon her, and we find no abuse of discretion by the court below. See *Mielcuszny et ux. v. Rosol,* 317 Pa. 91, 176 A. 236.

Order is affirmed.