Stoner, to use, *v.* Wise, Appellant.

Argued March 29, 1938. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Van A. Barrickman,* for appellant.

*W. W. Stoner, Marcus W. Stoner* and *J. M. Stoner & Sons,* for appellee, were not heard.

OPINION BY MR. JUSTICE BARNES, June 30, 1938:

This appeal is from an order of the court below refusing to open a judgment entered upon a bond accompanying a mortgage, and to permit the defendant to make a defense thereto. In an appeal of this character the scope of our review is limited to an examination of the record to determine whether there has been an abuse of discretion on the part of the court below. This is in accordance with the rule established in innumerable cases and recently stated at length by this Court in *Mielcuszny v. Rosol,* 317 Pa. 91, 93, where we held that an abuse of discretion is not merely an error of judgment, but may occur where the action of the court is manifestly unreasonable, or the result of prejudice, or where there has been a misapplication of the law. The limitations of this review are recognized in the brief submitted on behalf of defendant.

From the evidence it appears that in January, 1924, the defendant was a tenant under lease from the estate of J. M. Stoner, of a certain parcel of real estate with a two-story brick building erected thereon, in the sixth ward of the City of Pittsburgh, and known as No. 2941 Penn Avenue. On January 22, 1924, he entered into a written agreement with Frank R. Stoner, one of the heirs of the lessor estate, to purchase this property for the sum of $10,000 to be paid as follows: $500 in cash upon the execution of the agreement, $3,500 in cash upon delivery of the deed, and the balance by the execution and delivery of a bond in the principal sum of $6,000 secured by a purchase-money mortgage upon the property, payable in three years from the date of the deed, with interest at the yearly rate of 6%, payable semi-annually.

In this written agreement it was stipulated as follows: "This contract on the part of the party of the first part [Frank R. Stoner] is made subject to his acquiring title to the above described property under decree of the Orphans' Court in Partition." This provi-

sion was included therein by Frank R. Stoner because the premises in question belonged to the estate of his father, J. M. Stoner, who died in September, 1912, survived by a widow and seven children. At the time of his death the father was seised of various pieces of real estate, including the property here in question. His will was not found until after the death of his widow on September 4, 1922, when it was admitted to probate. He devised his entire estate in fee to his seven children, and provided for two annuities, one in the sum of $2,000 payable yearly to his widow, and the other for $1,200 payable in like manner to his unmarried daughter, Aurelia E. Stoner. Both annuities were made charges against his real estate. The annuity for the widow was extinguished by her death, while the one in favor of the daughter remained a lien upon his properties.

Following the death of their mother it was deemed advisable by the Stoner heirs to partition the real estate among themselves, and to provide by a separate trust fund for the payment of the annuity to Aurelia E. Stoner, in order that the title to the various pieces of real estate taken by the heirs might be discharged from that lien. By order of the Orphans' Court of Allegheny County entered on February 6, 1924, the partition of the real estate was decreed, and to the plaintiff, Frank R. Stoner, there was awarded a fee simple title in severalty to the premises on Penn Avenue, discharged from the lien of the remaining annuity.

On February 15, 1924, nine days after the decree in partition was made, the plaintiff and Helen M. Stoner, his wife, conveyed the Penn Avenue property to defendant, who made the cash payment and at the same time executed and delivered the purchase-money mortgage as required by the terms of the agreement. The mortgage was recorded on the same day but the defendant did not place his deed upon record until August 1, 1924. The bond and mortgage were assigned by Frank R. Stoner

to the use plaintiff on February 16, 1924, and the assignment was noted on the margin of the mortgage record on March 26, 1924.

The defendant was duly notified by the use plaintiff of his purchase of the mortgage and accordingly paid to him the next semiannual payment of interest due on August 15, 1924. Thereafter the defendant promptly paid to the use plaintiff the installments of interest as they became due, to and including the interest payable on February 15, 1933. During this period of nine years at no time did defendant question his indebtedness to the use plaintiff upon the bond and mortgage, either as to the principal or interest. In fact it appears from the evidence that when the principal of the mortgage was extended in August, 1927, and again in August, 1930, defendant paid to the use plaintiff, who was engaged in the real estate business, a brokerage fee of $180 in consideration for each extension.

After February, 1933, the defendant was unable to meet the interest payments due upon the mortgage. In June, 1937, interest was then in default for a period of approximately two years. On September 9, 1937, when he was delinquent in the payment of interest to the extent of $743, and there was also due for taxes and insurance premiums advanced by the use plaintiff a further sum of $1,371.52, judgment was entered upon the bond accompanying the mortgage.

On September 29, 1937, the defendant filed the present petition to open the judgment, which was followed by a supplemental petition. After a rule to show cause was granted, the use plaintiff filed an answer and the depositions of the parties were taken. In the petition defendant alleges: (1) that at the time he signed the agreement of sale with defendant, Frank R. Stoner had no right, title or interest in the Penn Avenue property, and no authority to make a sale thereof, and that his action in so doing constituted a fraud upon defendant;

(2) that when the conveyance of the premises was made to defendant there was a lien thereon in favor of Aurelia E. Stoner, to secure the payment of an annuity, which still remains as a charge against the property; (3) that there was a verbal agreement with plaintiff that the purchase-money mortgage would not be recorded, but would be placed in the custody of the Franklin Savings and Trust Company in Pittsburgh, until there was a sufficient balance in defendant's account in that bank to pay it off; (4) that on December 24, 1924, as a result of the deposits made by defendant, there had accrued to his credit an amount in excess of that required to satisfy the mortgage in full, but defendant and his brother, J. M. Stoner, Jr., the president of the bank, neglected to appropriate the funds on hand for that purpose; (5) that on July 28, 1924, when defendant had sufficient funds in his account for the payment of the mortgage, he signed his name to a check for $6,000 and delivered it at that time to Frank R. Stoner, who accepted it and stated that he would deliver the cancelled mortgage to defendant at his home within a few days.

After argument before the court in banc, the petition to open the judgment was denied, and an order was entered by the court below discharging the rule granted thereon. From this order the defendant has taken this appeal.

While it is not possible, without burdening this opinion, to discuss all of defendant's allegations, we refer to what may be deemed the more material ones. We find little merit in the contention that the plaintiff had no title to the property at the time the agreement of sale was made with defendant, for, as we have stated, the contract by its own terms was made *"subject to his [the plaintiff's] acquiring title . . . under decree of the Orphans' Court in partition."* The evidence shows that the defendant had knowledge that the properties belonging to the estate of J. M. Stoner were the subject of pending partition proceedings, and that by agreement

among the heirs, the property in question was to be awarded to Frank R. Stoner. No objection was made by the defendant on February 15, 1924, to settlement under the terms of the agreement for the conveyance then made to him of the property. At that time he was satisfied that the title was a good and marketable one in fee simple, clear of encumbrances, and he readily made the cash payment of $3,500 then due, and executed and delivered the purchase-money mortgage. Furthermore, the record in the partition proceedings in the Orphans' Court, introduced here in evidence, and the testimony on behalf of the use plaintiff, conclusively establish the fact that a good title was made to defendant, freed and discharged of the annuity in favor of Aurelia E. Stoner, by virtue of the decree entered in that court on February 6, 1924.

We have searched the record in vain for any evidence to sustain the claim of a verbal agreement to refrain from recording the mortgage, and to appropriate from the defendant's funds on deposit with the Trust Company the amount required for its payment. The fact remains that the sum of $6,000 was not withdrawn from defendant's account, as is shown conclusively by his bank statements which are in evidence. The finding of the court below that "an examination of the record fails to disclose any withdrawal from the account of Paul Wise at or about the time of the alleged payment of the mortgage" is well justified. There was no proof that the plaintiff, or J. M. Stoner, Jr., had any authority or control over the accounts of the defendant with the bank in question; nor was there produced or accounted for any check dated July 28, 1924, in the sum of $6,000; which was allegedly given to the plaintiff in satisfaction of the mortgage. As stated, the evidence shows that at no time was there a withdrawal of such amount from defendant's accounts at the bank.

The defendant has no satisfactory explanation to offer for his continued payments of interest over a period of

years upon a mortgage which he claims to have paid in full. His assertion that all his payments were made under protest does not tend to strengthen his position, particularly since the claim was not advanced until he had defaulted upon his obligation. We are led to the conclusion reached by the court below that "It is incredible . . . that anyone would have continued to make interest payments for more than thirteen years and to have paid on two separate occasions brokerage fees for the extension of a mortgage when he knew that he had already paid out of his own pocket the principal in full."

Referring again to the decision of this Court in *Mielcuszny v. Rosol,* supra, we set forth the character of the evidence which alone will warrant the application of the equitable remedy which the defendant here invokes. We said (p. 94) : "To open a judgment there must be more than a mere conflict of evidence; it is not a case of oath against oath, but there should be such evidence as carries conviction as to truth, so that a chancellor in forming his deliberate judgment is impressed with the fact that the ends of justice would be met by opening the judgment and submitting the matter to a jury." See also *Helzlsouer v. Golub,* 306 Pa. 474; and *Rambo B. & L. Assn. v. Dragone,* 311 Pa. 422.

We have made a careful study of the record and have given full consideration to the various contentions urged on behalf of the defendant. As a result thereof we are convinced that there was no abuse of discretion on the part of the court below in refusing to open the judgment. In our opinion the conclusion which it reached is warranted by the evidence and should not be disturbed: *Slifer v. Slifer,* 286 Pa. 299; *Nat. Finance Corp. v. Bergdoll,* 300 Pa. 540; *Spanko v. Trisick,* 307 Pa. 166; *Sirant v. Solkosky,* 311 Pa. 142.

The order of the court below is affirmed. Costs to be paid by appellant.