Cesco Supply Company *v.* Brown (et al., Appellant).

Argued November 22, 1950. Before HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (RHODES, P. J., absent).

*Warren H. Van Kirk,* with him *Don F. D'Ivernois,* for appellant.

*C. Harold Skodol,* for appellee.

OPINION BY GUNTHER, J., March 12, 1951:

This appeal is from a decree of the court below making distribution among creditors of funds paid into court representing the purchase money of a sale under the Bulk Sales Act.[1]

---

[1] Act of May 23, 1919, P. L. 262, §1 et seq., 69 PS §521.

On October 17, 1945, Cesco Supply Company entered into an agreement with Thomas M. Brown, trading as Tom Brown, to sell to the latter its inventory in bulk under the Bulk Sales Act for the sum of $20,851.43. On December 20, 1945, an officer of the vendor furnished, in accordance with the provisions of the Bulk Sales Act, a list of the vendor's creditors together with the amounts of indebtedness due thereon. Philip G. Gruber, appellant, is there listed as a creditor with a notation after his name as follows: "Contract declared forfeited by his default in performance". Appellant had been employed by the Cesco Supply Company and his claim was based on a written contract of employment. Subsequently, ten days' notice was given to all creditors, including appellant, setting forth the date the sale was to be consummated; that shortly after the sale at a meeting of the creditors of the vendor it was agreed among the creditors that a 50% distribution of the purchase price should be made to creditors. Although appellant received notice thereof, he did not appear. In January, 1946, the sale was conducted. Sometime in 1946 (there is no evidence as to the date), this partial distribution was made to creditors based upon a 50% payment against their claims. Appellant did not participate in this 50% partial distribution. After the 50% distribution was made, a balance of $7,211.59 remained in the hands of the vendee. On May 8, 1946, more than ninety days after the sale, appellant sued his former employer and two years later, on April 26, 1948, obtained a judgment against Cesco Supply Company in the amount of $2,224.04. Subsequent to this partial distribution, all creditors have been paid through other sources except three—Allegheny-Ludlum Steel Corporation; Midwest Abrasive Company; and Philip G. Gruber, the only creditors to be considered. Allegheny-Ludlum Steel Corporation's claim amounts to $8,002.67; Midwest Abrasive Company's claim

amounts to $4,137.50, and appellant's claim amounts to $2,224.04. On July 8, 1948, Gruber, after obtaining his judgment against Cesco Supply Company, issued an attachment execution naming the vendee as garnishee, and on December 28, 1948, obtained a judgment against the garnishee in the amount of $2,224.04. On March 22, 1949, the vendee garnishee, pursuant to Section 3 of the Bulk Sales Act, paid into court the sum of $7,211.59, representing the balance due on the purchase price not paid to the vendor or his creditors and undistributed. The court below appointed a master to recommend a scheme of distribution, and the master, after hearing and taking testimony, recommended that appellant was entitled to receive 50% payment on his claim as if participating in the original partial distribution, and a final distribution of 14-1/2% representing one-third of the balance remaining which was shared one-third each with Allegheny-Ludlum Steel Corporation and Midwest Abrasive Company. The master also recommended that $900.00 be set apart out of the funds until such time as other pending litigation in which Cesco Supply Company has sued appellant for $900.00 was settled, whether in favor of appellant or Cesco Supply Company. Appellant filed exceptions to the master's report contending that the master erred in not allowing his claim in full. The court below followed the recommendation of the master that appellant was entitled to 50% and 14-1/2% of his claim, but reversed the master regarding the withholding of $900.00. The court reduced this amount to $580.50.[2] This appeal followed.

Appellant contends that he, as an execution creditor, is entitled to payment in full of his claim with

---

[2] The same percentage, i.e., 64-1/2%, which was paid on appellant's claim, was withheld from the amount of Cesco Supply Company's claim of $900.00 against appellant.

costs out of the fund remaining in the hands of the court; that because he has reduced his claim to judgment, issued an attachment execution, and obtained judgment against the vendee as garnishee, he is entitled to a preference over other creditors.

The pertinent provisions of Section 3 of the Bulk Sales Act read: "Whenever any person shall . . . purchase . . . any stock of goods . . . in bulk, for cash . . . and shall pay any part of the purchase price to such vendor, . . . without first having demanded and received from said vendor . . . the statement [of creditors] . . . and without paying or seeing to it that the purchase money of said property is applied to the payment of the bona fide claims of the creditors of the vendor pro rata according to the dignity of their several claims . . . and without first having sent the notices of said sale . . . such sale or transfer shall be fraudulent and void, . . .: Provided, however, That if the vendor and creditors do not agree in writing to a schedule of distribution of the proceeds . . . *or for any other reason the said purchaser . . . is unable to make proper distribution as herein provided,*—then the said purchaser . . . shall . . . pay the purchase money of said sale . . . into the court of common pleas of the county in which the place of business of the vendor is situate, and the said court shall, upon motion of any party interested, frame an issue in such form as said court may deem proper, and make distribution of said fund to and among the persons legally entitled thereto . . .". (Italics supplied)

At the time of the bulk sale in January, 1946, the appellant was a general creditor as were all of the other creditors here involved. After that sale was consummated and the ninety day limitation of the Act expired, during which the invalidity of the sale could

have been raised[3], appellant attempted to increase the dignity of his claim and acquire a preference on the fund by reducing his claim to judgment and proceeding by way of an attachment execution. Almost three years after the sale, appellant obtained judgment against the vendee garnishee. The court below said: "At the time of the Bulk Sale, Gruber was not a judgment creditor but a general creditor. His position is, therefore, the same as the other general creditors and he cannot be allowed to obtain a preference by obtaining a judgment and issuing an execution attachment thereon."

Section 3 contemplates a pro rata distribution of the purchase price among the creditors. An agreement between the vendor and its creditors was reached shortly after the sale in bulk held in January, 1946. Although appellant did not appear or agree at that time, he was notified of the meeting of the creditors and did not attend and participate therein in the schedule of distribution worked out among the creditors. The Bulk Sales Act is designed to prevent the defrauding of creditors by the secret sale or disposal in bulk of all or a substantial part of a merchant's stock of goods, and looks to a pro rata distribution to all creditors in the fund available for distribution. That was accorded to appellant by a 50% payment on account of his claim against the vendor. Moreover, appellant is receiving an additional 14-1/2% more than other creditors, and it comes with little grace for him to insist upon 100% payment of his claim out of this fund. There is not a word in the Bulk Sales Act which gives a preference to an execution creditor in the distribu-

---

[3] There is no question here involved concerning the validity of the sale as complying with the Bulk Sales Act. Appellant specifically sets forth in his brief that no challenge is made regarding the validity of the sale.

tion of the purchase price paid for the sale of goods in bulk, and in the case of *Benedict & Eberle Co. v. Hollman*, 68 Pa. Superior Ct. 155, the remedy of attachment execution was denied a creditor on similar facts, the Court holding that the funds in the hands of the garnishee were immune from the grasp of the attaching creditor. In *Benedict & Eberle Co. v. Hollman*, supra, a creditor of the vendor issued an execution attachment and summoned as garnishee an escrow holder of the purchase price. The vendor had agreed to sell his liquor dealer's business to one Gerlowsky, and to protect creditors the agreement of sale provided that the purchase price be placed in escrow so that the creditors could be paid and any balance remaining to be paid to the vendor, provided the court sanctioned the transfer of the liquor license. Notice of the sale under the Bulk Sales Act was given to all creditors. Appellant, one of the creditors, issued a writ of attachment execution and demanded judgment against the vendee garnishee, which judgment was refused, the court holding that the fund in the hands of the garnishee was beyond the reach of the attaching creditors. The Court said: "It was apparent, however, the sale contemplated was within the class of sales regulated by the Act of March 28, 1905, P. L. 62, commonly known as the 'Bulk Sales Act.' Were it not for the provisions of that statute, the parties to the contract could have, inter sese, carried it into complete execution. But because of that act the purchaser needed some protection in order to be assured that what he had bought and paid for might not be thereafter seized by some of the creditors of the seller. . . . Would it have been legally possible for Hollman, the judgment debtor in the present case, to have thereupon maintained an action against the trustees in the possession of the fund for the recovery of the money? It seems clear to us such an action could not

have been successfully prosecuted. The agreement had so far been executed that it was beyond his power to revoke it. The interests of other persons had intervened and there was, as we view it, a valuable consideration furnished by the creditors of which the trustees named were bound to take notice. This was the situation when the appellant company, a creditor, issued its writ of attachment execution. We agree with the learned judge below that the fund in the hands of the garnishee was immune from the grasp of the attaching creditor. . . . The valuable rights of others had vested and could not be disturbed or overthrown by the act of an attaching creditor".

Order affirmed.