Harrison, Appellant, *v.* Hykel.

Argued October 6, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (HIRT, J., absent).

*Robert F. Jackson,* for appellant.

*Thomas J. Reilly,* with him *Reilly & Pearce,* for appellees.

OPINION BY RHODES, P. J., April 12, 1955:

This is an appeal from the refusal of the court below, sitting in banc, to take off compulsory nonsuit entered against plaintiff, Helen E. Harrison, and the entry of judgment for defendants, George J. Hykel and Yvonne Hykel, his wife, in an assumpsit action. Plaintiff, as buyer, and defendants, as seller, entered into a written agreement providing for the purchase and sale of certain goods, fixtures, chattels, business, and equipment and the transfer of liquor license of a restaurant owned and operated by the defendant George J. Hykel, at 2225 East Darby Road, Havertown, Haverford Township, Delaware County, Pennsylvania.

Among other things, the agreement provided: "The Seller agrees that prior to settlement and as a condition precedent thereto, Seller will fully comply with the provisions of the Bulk Sales Act as amended, . . ." The principal question on appeal, as in the court below, is whether, on the record, as a matter of law the court could say that the buyer did not have the right to declare the agreement null and void and to demand a return of the initial payment in the amount of $1,-

750, because the seller failed to furnish the buyer with a list of creditors under the Bulk Sales Act at least ten days before the date fixed in the agreement for settlement.

This action was instituted by the buyer to recover the down payment to the seller. At the completion of plaintiff's evidence, the trial judge withdrew the case from the jury and entered a compulsory nonsuit. The court in banc refused plaintiff's motion to take off the nonsuit, and plaintiff has appealed.

On appeal from the refusal to take off the compulsory nonsuit, the oral evidence must be viewed in the light most favorable to the plaintiff, and she must be given the benefit of every fact the jury might reasonably infer in her favor from the evidence received or erroneously excluded. *Kimble v. Wilson*, 352 Pa. 275, 277, 42 A. 2d 526; Act of March 11, 1875, P. L. 6, §1, 12 PS §645. Moreover, plaintiff is entitled to the construction of the agreement as favorable to her as the writing will permit. *Cirotti v. Wassell*, 163 Pa. Superior Ct. 292, 295, 60 A. 2d 339.

The facts appear from the evidence or are admitted under the pleadings, and are such as the jury might have found. The agreement was dated August 15, 1952, and provided for a down payment of $1,750 by the buyer, which was to be forfeited as liquidated damages in case of default by the buyer. The balance of $15,750 was to be paid in escrow to plaintiff's attorney, Edward A. O'Neill, Esq., and held "pending written approval of the transfer of the said [liquor] License to the Buyer by the Pennsylvania Liquor Control Board, at which time said funds are to be disbursed in accordance with the terms and conditions of this Agreement." As to the date of settlement the agreement stated: "The said parties hereby bind themselves, their Heirs and Executors to the faithful per-

formance of this Agreement on or before September 15, 1952, unless the said time is further extended by mutual agreement."

Plaintiff testified that at the time the agreement was executed her then attorney, Mr. O'Neill, demanded that the seller furnish a list of creditors ten days before settlement. Mr. O'Neill corroborated plaintiff as to an oral demand, but admitted no written demand was made for production of a list of creditors of the seller beyond that contained in the terms of the agreement itself. On September 10, 1952, Francis G. Wenzel, Esq., who had on that day been retained by plaintiff as her attorney, wrote the seller a letter calling defendants' attention specifically to the terms of the agreement requiring transfer of the liquor license on or before September 15, 1952, and stating that full compliance was to be made with the provisions of the Bulk Sales Act, that no extension of time would be granted as requested, and that noncompliance with the terms and conditions of the agreement of sale would be considered a breach of the agreement. The following day Wenzel again wrote defendants as follows: "I conferred with my client this date and apprised her of developments. I ascertained from her that you have not complied with the Bulk Sales Act, as called for in the Agreement of Sale. Accordingly, please be advised that the Agreement of Sale is null and void, due to your breach of the contract in this respect." Plaintiff and her counsel testified that the defendant George J. Hykel repeatedly sought to have the date of settlement postponed, and that such requests were refused. It was also testified that this defendant admitted he had one creditor and was supposed to submit a list ten days before he made settlement, and that he stated to plaintiff's attorney at the time of the signing of the agreement his indebtedness

amounted to $2,300 which he owed to a bank. On September 12, 1952, the defendant George J. Hykel submitted an affidavit showing a list of creditors with claims totaling about $7,232.94. This amount was of course substantially less than the sale price of $17,500. The Liquor Control Board approved the transfer of the license on September 11, 1952, and a lease covering the premises had been executed by defendants as specified in the agreement of sale.

The Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §521 et seq., was designed to protect creditors against the sale of stock in hand as a whole, to the prejudice of those unpaid, and who could look to the assets alone for the satisfaction of their claims. *West Shoe Co. v. Lemish,* 279 Pa. 414, 417, 124 A. 87; *Cesco Supply Co. v. Brown,* 168 Pa. Superior Ct. 554, 559, 78 A. 2d 874. However, a sale of goods in bulk may be valid as between the parties although there has been no compliance with the Act. *Gibbon v. Arronson,* 80 Pa. Superior Ct. 36. Section 1 of the Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §521 (repealed by the Act of April 6, 1953, P. L. 3, 12 A. PS §10-102, known as Uniform Commercial Code but not applicable here) made it the duty of the purchaser, before paying the purchase price, to demand, and the vendor to furnish, a sworn written statement listing the vendor's creditors together with the amount due or owing each. Under section 2 of the Act, 69 PS §522, it was the duty of the purchaser "at least ten (10) days before the completion of said purchase or the payment therefor or undertaking to sell, to notify, personally or by registered mail, each of said creditors of the said vendor of said proposed sale, the price to be paid therefor, the time set for the sale of said goods or fixtures, or goods and fixtures, if same are to be sold at auction, and the terms and conditions thereof, and a copy of

the statement of creditors provided for in section one of this act." Section 3, 66 PS §523, provided that if there had been no compliance with the conditions of the Act the purchaser became liable to creditors of the seller to the extent of the fair value of the property bought or transferred.

Did plaintiff make out a prima facie case, that is, was it possible for the triers of fact on this record to find that she was justified in declaring the agreement breached by reason of the failure to furnish the list of creditors ten days or more in advance of the date fixed for settlement in the agreement? In the consideration of this issue the following subsidiary questions arise: (1) Was it necessary for plaintiff to demand a list of creditors of the seller under the agreement? (2) Was the time fixed for settlement of the essence under the agreement? (3) Did seller's failure to furnish a list of creditors ten days in advance of the settlement date constitute a material breach of the agreement of sale? (4) Did plaintiff's conduct amount to a waiver of any breach, that is, was there an agreement to postpone settlement and notification of the creditors? We think it was possible that all the material questions could have been determined favorably to plaintiff on this record. It follows the court below was in error in entering a nonsuit. The agreement expressly made compliance with the Bulk Sales Act by the seller a condition precedent to settlement. It could be found that the ten-day notice provision was necessarily written into and made a part of the agreement between the parties. Plaintiff consistently requested the creditor list ten days in advance of settlement and did not, as a matter of law, waive or otherwise negate her right to demand such a list ten days before settlement. Further, it could be determined under applicable principles of law that time was of the essence, and that plaintiff was entitled

to the list of creditors ten days or more in advance of settlement, and that the seller's failure to comply constituted a material breach entitling plaintiff to declare the agreement null and void and to prevail in her action.

It may be that the evidence presented by the plaintiff, which included the agreement, is susceptible of two permissible constructions—one in favor of the plaintiff's contentions and the other in favor of the defendants. But in entering a nonsuit the contract provisions may not be rewritten or the fundamental rule that the evidence must be viewed most favorably to plaintiff violated. "A non-suit may be entered only in a clear case; all doubts must be resolved in favor of a submission of the factual issues to a jury. Kallman v. Triangle Hotel Co., 357 Pa. 39, 52 A. 2d 900": *Smith v. Farver,* 173 Pa. Superior Ct. 391, 393, 394, 98 A. 2d 247, 248. As the case must be remitted for trial, there is no purpose in an extended discussion of the merits.

Judgment of the court below is reversed, and a new trial awarded.