198 Pa. Superior Ct. 435 (1962)
Macy
v.
Oswald et ux., Appellants.
Superior Court of Pennsylvania.
Argued April 9, 1962.
June 13, 1962.
*436 Before RHODES, P.J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.
Robert S. Glass, with him Glass and Glass, for appellants.
Clifton McWilliams, Jr., with him McWilliams, Margolis and Coppersmith, for appellee.
*437 OPINION BY MONTGOMERY, J., June 13, 1962:
This appeal is the result of an order refusing to open a confessed judgment entered in appellee's favor against appellants. In such cases the scope of review is limited to an examination of the record to determine whether there has been an abuse of discretion on the part of the lower court. Ahrens v. Goldstein, 376 Pa. 114, 102 A. 2d 164; Associates Discount Corporation v. Kelly, 169 Pa. Superior Ct. 74, 82 A. 2d 689. The judgment resulted from the execution and delivery of a judgment note by appellants to secure the unpaid balance of the purchase price due appellee on a sale of a business, a gasoline station, to James Oswald, one of the appellants.
In their petition to open the judgment appellants alleged the following as reasons, viz.:
(a) Theresa, being a married woman, could not become liable as an accommodation signer; (b) fraud; (c) failure to comply with Bulk Sales Act Provision of Commercial Code; (d) failure to register the business under the Fictitious Names Act; (e) failure of good title, since the other partner was not joined in the sale; and (f) violation of the Statute of Frauds.
The following facts are established:
On and prior to June 4, 1957, William Macy, the appellee, and Michael Macy were, as partners, the owners and operators of a service station located in Johnstown, Pennsylvania. The business was operated and conducted under a fictitious name, "Corner Service Station", but was not registered as a fictitious name.
On June 4, 1957, William Macy alone negotiated with James Oswald alone and entered into an oral agreement whereby James Oswald agreed to purchase said service station business for the sum of $1,500. Oswald paid the appellee the sum of $125 cash and it was agreed that the balance of $1,375 should be secured by a judgment note, payable six months after date, *438 without interest. The parties together went to the office of an alderman who prepared the note, deleting the printed provision "with interest". The alderman suggested that Theresa Oswald, wife of James Oswald, should likewise sign the note, which she did. At the time Macy told Oswald that "everything was okay", indicating that he could convey a good unencumbered title to the business.
On June 5, 1957, Oswald commenced operating the business, but, on that same day the sheriff of Cambria County levied on the various items of personal property and equipment connected with the service station upon a writ of execution based upon a judgment against William J. Macy and Michael R. Macy. On June 28, 1957, the sheriff posted sale notices on the service station premises which were removed by Oswald within a few hours. The debt underlying the execution was paid by Macy within a few days after June 28, 1957.
Oswald alleges that he complained to Macy about the execution notices and that he asked Macy to take back the business, return his money and cancel the deal, but Macy refused. Macy denied that Oswald asked him to take the station back. Oswald closed the station on June 30, 1957, and reopened on July 29, 1957, remaining in business until September 30, when he closed the business finally and sold the remaining personal property for $300.
The Statute of Frauds is not applicable to the situation in the present case. The note given by the Oswalds to Macy is not itself a contract for the sale of goods. Even if it is considered an integral part of the contract, it is well established that the Statute of Frauds applies only to executory contracts and not to agreements which have been completely executed on both sides. Gerlock v. Gabel, 380 Pa. 471, 112 A. 2d 78; Producers Coke Co. v. Hoover, 268 Pa. 104, 110 A. 733. Here, there was full performance by complete disposition *439 of the property on the part of the appellants to their own use.
The provisions of the Uniform Commercial Code regulating bulk sales are also inapplicable. A sale of goods in bulk may be valid as between the parties although there has been no compliance with the act. Harrison v. Hykel, 178 Pa. Superior Ct. 118, 113 A. 2d 160.
The bulk transfers provisions of the Code, Act of April 6, 1953, P.L. 3, § 6-104, as amended by the Act of October 2, 1959, P.L. 1023, § 6, 12A P.S. 6-104, requires that the transferee obtain from the transferor a sworn schedule of the property and a list of existing creditors. Where compliance with the bulk sales provisions of the Code is expressly made a condition of the contract, failure to comply may justify recision. Here, there was no such provision and the appellants themselves did not comply with the Code. Therefore, they have no standing to complain. Kadair v. Serack, 63 Pa. D. & C. 27; Rubin v. Goldberg, 18 Pa. D. & C. 371.
As to the allegation that Theresa Oswald, being a married woman could not become liable as an accommodation signer, it is obvious that unless Theresa Oswald had signed the promissory note the transaction would not have been consummated since the alderman who prepared the note advised Macy that he should secure the signature of Theresa Oswald. She was, therefore, a co-maker of the note. The defense of "accommodation maker" is no longer available to a married woman who signs a note along with her husband, as a co-maker. Roller v. Jaffee, 387 Pa. 501, 128 A. 2d 355.
Failure to comply with the Fictitious Names Act does not impair the validity of the contract between the parties. The note upon which the present case is predicated is not made out to any fictitious name but was payable to William Macy individually, and this *440 action was instituted in the same manner. There is no basis for the complaint that the suit is being brought in the unregistered fictitious name of a business enterprise, but even if it were, where the defendant admits he has full knowledge of the true identity of the persons who comprised the entity which was subject to, but not registered under the Fictitious Names Act, he is estopped from denying their right to suit or recovery. Ross v. McMillan, 172 Pa. Superior Ct. 298, 93 A. 2d 874.
The appellant further contends that since William Macy was but one of two partners, and since the other partner was not involved in the negotiations, William Macy could not transfer the service station and equipment. It is true that a partner cannot make a valid transfer or dispose of capital assets which are not the stock in trade of the partnership without the consent of his copartner. Wilson v. McKee, 110 Pa. Superior Ct. 544, 168 A. 341. However, here, it is clear from the testimony of the appellee's partner that he had full authority to transfer the business: "Q. You have heard Mr. Macy testify to the fact that this note was made to him. Was that satisfactory to you? A. Yes. I gave him my permission." And upon cross-examination: "Q. Just one question, Mr. Macy. You said you had an arrangement with your brother, or some sort of understanding about this. Did you at any time either prior to the negotiations with Oswald or after June 4, 1957, tell Mr. Oswald that everything that took place was all right with you? A. Well, I told him before the sale it was all right because I was working night turn. Q. What did you tell him? A. I just told him whatever my brother signed the note it would be all right with me."
Under these circumstances, the partner who entered into the agreement will be deemed to have been acting as the authorized agent of the partnership in so doing *441 since his partner was fully informed of the sale of the business and had specifically stated to the buyer that any agreement would be acceptable to him. Furthermore, as indicated in the opinion of the lower court, since the husband-appellant entered into possession of the business, carried it on for a period of time, sold the assets remaining on hand when he abandoned it and generally conducted the business as the owner, without challenge to his title, he cannot now argue that his title was doubtful. Persons who continue the use and enjoyment of property are estopped from repudiating their title for the mere technical purpose of turning a party out of court. The Pennsylvania Railroad Company v. Griffith Jones, 50 Pa. 417.
The appellants' contentions that the transaction was fraudulent and void and that they have a meritorious defense are based upon the alleged deception by Macy in assuring Oswald that "everything was okay." As the lower court stated in its opinion, Macy was apparently unaware that there was a judgment against him upon which an execution was about to issue. He paid off the debt within a few days. Oswald removed the sheriff's notices within a few hours after they were posted and it does not appear that the posting was a serious detriment to his business activity.
There is a dispute in the evidence as to whether James Oswald made any attempt to rescind his contract and return the business. The lower court found that he did not make such an offer but, on the contrary, continued the business and finally liquidated it. Under those circumstances said appellant waived any rights to revoke what was at most a voidable contract, as he was advised by his lawyer it was, and not one that was void ab initio. However, under either circumstance the lower court did not abuse its discretion in concluding that the proof of fraud was not so clear and convincing as to establish it by the preponderance *442 of the evidence, viewing the evidence favorably to appellee that there was no intention to defraud the purchaser, and that the claim on which the execution was based was in dispute and eliminated immediately on notice to appellee of the effect on appellants. To warrant the opening of a judgment sought on grounds of fraudulent representation the record must show more than a conflict of evidence. Stoner v. Wise, 331 Pa. 446, 200 A. 320; Teutonic Building and Loan Association v. Stein, 125 Pa. Superior Ct. 589, 190 A. 189. The proof of fraud should be clear and convincing and must be established by the preponderance of evidence. It is clear from the record that the appellants failed to produce such evidence to justify the lower court in opening the judgment and it was completely within the bounds of discretion in refusing to do so.
Order affirmed.