GEORGE STASH & SONS, Appellant,

v.

NEW HOLLAND CREDIT COMPANY, LLC, Appellee.

Superior Court of Pennsylvania.

Submitted April 3, 2006.

Filed Aug. 2, 2006.

Melinda D. Dellarose, Uniontown, for appellants.

Stephanie T. Anderson, Pittsburgh, for appellee.

BEFORE: MUSMANNO, ORIE MELVIN and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This is an appeal from the order granting summary judgment on the grounds that Appellant, George Stash & Sons, having not registered its fictitious name with the Commonwealth of Pennsylvania, lacked the capacity to sue. We reverse and remand for further proceedings.

¶ 2 George and Mark Stash performed mowing services under the fictitious name George Stash & Sons. They did not register this name. In 1995, Appellant entered an installment sales contract to buy two pieces of equipment: (1) a Case tractor with an attached mower and (2) an Alamo mower. The names on the contract were George Stash & Sons as buyer and Security Ford New Holland, Inc. as creditor. Security Ford later conveyed its interest in this contract to Appellee.

¶ 3 One of Appellee's documents, entitled "Retail Statement of Account," listed George Stash & Sons as Appellee's customer and showed a Dunbar, Pennsylvania address for Appellant. This address had also been listed on the original contract.

¶ 4 Appellant made payments for at least several years. From time to time, when Appellee had questions regarding amounts due, Appellee telephoned George and/or Mark Stash to discuss the George Stash & Sons account. In 1999, Appellee repossessed the equipment, contending that Appellant was in default. Following repossession, Appellee sent Appellant a document styled "Notice of Repossession and Right to Redeem." Appellee sent this notice to the aforementioned Dunbar address and directed it to "George Stash and Sons care of George Stash."

¶ 5 At a later point in 1999, Appellee sent Appellant a second Notice of Repossession and Right to Redeem. The record contains a cover letter that Appellee mailed along with the notice. The inside address on the letter was, again, the Dunbar location and the addressee was "George Stash & Sons Attn.: Mark Stash."

¶ 6 The letter confirmed that Appellee had received two checks from Appellant. One had been dishonored, and one had been a certified check. The correspondence also advised Mark Stash of the amount necessary to redeem the equipment.

¶ 7 The parties failed to resolve their differences. Appellant then filed suit, alleging, *inter alia*, that it had redeemed the property and paid the contract in full after the repossession. The complaint sought money damages stemming from the loss of the equipment. Appellee moved for summary judgment on multiple bases. The court granted Appellee's motion on the basis that Appellant lacked capacity to sue because it had never registered its fictitious name with the Commonwealth of Pennsylvania. The court did not rule on the other claims.

¶ 8 When we review a summary judgment order, we must determine whether the record: (1) establishes that the material facts are undisputed; or (2) contains insufficient evidence to make out a *prima facie* cause of action and, therefore, there is no issue to be submitted to the jury. *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 2006 PA Super 68, ¶ 17, 896 A.2d 616. The moving party has the burden to prove that the material facts are undisputed. *Davis v. Resources for Human Development, Inc.*, 770 A.2d 353, 356–57 (Pa.Super.2001). However, the nonmoving party cannot merely rest on its pleadings, but must

* Retired Senior Judge assigned to Superior Court.

demonstrate that there is a genuine issue for trial. *Id.* At the same time, we examine the record in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Hoffman v. Brandywine Hospital,* 443 Pa.Super. 245, 661 A.2d 397, 399 (1995).

¶ 9 This Court will reverse a summary judgment order only when the trial court has committed an error of law or abused its discretion. *Butterfield v. Giuntoli,* 448 Pa.Super. 1, 670 A.2d 646, 650 (1995). Nonetheless, we keep in mind that "[s]ummary judgment should be entered only in those cases in which it is clear and free from doubt that the moving party is entitled to judgment as a matter of law." *InfoSAGE,* 2006 PA Super 68, ¶ 17, 896 A.2d 616.

¶ 10 The Fictitious Names Act provides that an entity which has failed to register its fictitious name shall not be permitted to maintain any action in a tribunal in this Commonwealth. 54 Pa.C.S.A. § 331. Before such an entity can institute suit, it must register the name and pay a civil fine of three hundred dollars. *Id.* Failure to register, however, does not impair the validity of contracts entered by the entity. *Id.*

¶ 11 The purposes of the Fictitious Names Act are: (1) to protect persons giving credit in reliance on the fictitious name; and (2) to establish definitely the identities of those owning the business for the information of those who have dealings with the entity. *Lamb v. Condon,* 276 Pa. 544, 120 A. 546 (1923); *Ross v. McMillan,* 172 Pa.Super. 298, 93 A.2d 874, 875 (1953). The statute prohibiting suit and imposing a fine is penal in nature and should not be construed to extend beyond the purposes for which it was evidently enacted. *Lamb,* 120 A. at 546; *Ross,* 93 A.2d at 875.

¶ 12 As a result of these considerations, those who deal with an unregistered party and accept the benefits of business transactions, having full knowledge of the party's true identity notwithstanding the fictitious name, are estopped to deny the party's capacity to sue. *Macy v. Oswald,* 198 Pa.Super. 435, 182 A.2d 94, 97 (1962); *Ross,* 93 A.2d at 875. If such a person knows with whom he is dealing and is not deceived, he cannot assert the lack of capacity to sue under the Fictitious Names Act. *Macy,* 182 A.2d at 97; *Ross,* 93 A.2d at 875. Certainly, the unregistered party may still be liable for the civil fine, but the lack of registration, in such circumstances, does not preclude the suit. *Lamb,* 120 A. at 548.

¶ 13 Appellee accepted the benefits of doing business with Appellant. In particular, Appellee accepted payments from the fictitious entity. When Appellee had questions about the George Stash & Sons account, Appellee knew to call George and/or Mark Stash. Appellee also wrote directly to Mark Stash concerning the contract.

¶ 14 The documents which Appellee possessed, such as the original contract and Appellee's own account records, showed George Stash & Sons as the buyer/customer. Those documents consistently indicated a valid address at which Appellee successfully reached the Stashes. When Appellee sent notices concerning redemption to George Stash & Sons, Appellee directed those notices to George and/or Mark Stash.

¶ 15 These facts demonstrate that Appellee knew the true identities of the persons comprising the fictitious entity and also knew where to reach those individuals. Appellee was neither deceived nor prejudiced by Appellant's failure to register the fictitious name.

¶ 16 The trial court ruled that, as a matter of law, Appellant could not institute suit because the name was unregistered. Under the facts of this case, we hold that Appellee is estopped from using the Fictitious Names Act to claim Appellant lacked the legal capacity to sue. We therefore find the trial court committed an error of law in granting summary judgment on the basis that Appellant lacked capacity to sue. As such, we reverse the trial court's order and remand for consideration of the remaining summary judgment issues.

¶ 17 Order reversed. Case remanded. Jurisdiction relinquished.